James M. Loring et al., Plaintiffs in Error, *v.* City of St. Louis, Defendant in Error.

June 7, 1881.

1. A county collector illegally collected interest on taxes, and delivered the same to the county to be held in trust until his right to collect had been judicially determined, pending which a separation of city and county was had, and the county paid the fund to the city to be held upon the same trusts. *Held*, that the city was liable therefor to the tax-payers.

2. In such a case the liability of the city is not affected by a clause in a contract between the county and the collector, to the effect that the contract gives no tax-payer a right to sue the county.

3. It is not, in such a case, necessary that the claim should be presented to or allowed by the county.

Appeal from the St. Louis Circuit Court, Adams, J. *Reversed and remanded.*

Loring & Loring, for the plaintiffs in error.

Leverett Bell, for the defendant in error.

Bakewell, J., delivered the opinion of the court.

We adopt the statement of defendant in error, which is as follows : —

" The petition in this case, which was filed in the court below on September 16, 1879, sets forth in substance, that in the years 1871, 1872, and 1873, one Constantine Maguire was collector of the county of St. Louis, and that he illegally, during said time, collected interest on delinquent personal tax-bills, in the aggregate amounting to a sum in excess of $25,000, of which amount the sum of $717.94 was collected from tax-payers whose names are stated in the petition.

" The petition further avers that on May 26, 1873, said Maguire made the following agreement with the County Court : —

'Agreement between the County Court of St. Louis County and Constantine Maguire, late collector of the revenue for said county, in relation to interest collected by him on delinquent tax-bills : —

' 1. Constantine Maguire will pay into the County Court of St. Louis County, the sum found by said court's committee to have been collected by him as interest on delinquent personal tax-bills, viz. : $25,159.34, less the amount of said interest involved in the suit of the State Savings Institution against him, now pending in the St. Louis Circuit Court (and which amount is to be by him paid into said Circuit Court to abide the decision on his interpleader in reference thereto against said association and said County Court), and also less the amount which said County Court may allow said Maguire for expenses incurred in relation exclusively to the collection of said delinquent personal tax-bills, and which expenses are by law, or under any order of said County Court, lawfully chargeable to said county, or to be refunded to said Maguire by it. On the balance thus ascertained as to be paid by him, he shall also pay into said County Court at the same time with the principal, interest thereon at the rate of six per cent per annum from October 22, 1872, being the date of the service on him of the order of said County Court, that he ren-

der an account of said interest collected on delinquent personal tax-bills. Said Maguire will, without delay, present to the county auditor all his claims for allowance or reimbursement of said expenses, and said County Court will, without unnecessary delay, proceed to pass upon the same according to law, and only such amount as said court shall allow shall be deducted as aforesaid from said interest collected by said Maguire. The balance thus ascertained shall be paid forthwith by him into said County Court. But, notwithstanding said payment, said Maguire shall be free to appeal, or take his other remedy at law, from the decision of said County Court, rejecting any of his said claims; nor shall this agreement refer to any claims he may have against the county of St. Louis, for any expenses of his office as collector, as aforesaid, other than those relating exclusively to said collection of interest on delinquent personal tax-bills. The amount to be paid into said County Court by said Maguire, as aforesaid, shall be held by said court as a special fund, to await the determination of the legal questions in relation to the rights to the same, and at the discretion of said court may be deposited either in the county treasury or in some banking or saving institution of the city of St. Louis, either bearing interest or not, and on adequate security.

' 2. Should any tax-payer, by suit in good faith and properly defended, or in any suit to which said County Court of St. Louis is or shall be a party, recover from said Maguire any money paid him as interest on delinquent personal tax-bills, said County Court shall repay to said Maguire, out of the fund paid by him as aforesaid, a sum of money which shall bear to the total of said fund the same proportion that said interest originally collected by him and the subject of such suit, may bear to the total of such interest collected by him and ascertained by said County Court's committee, as hereinbefore set forth; the remainder of such judgment, whether of original demand, principal, or inter-

est, or cost, shall be paid by said Maguire without recourse on said County Court, or of said county of St. Louis.

' 3. Any payment by said County Court out of said fund to any tax-payer, by virtue of any act of the General Assembly of the State of Missouri now in force or hereafter enacted, or in accordance with a decision of the Supreme Court of Missouri, settling the question of right to interest on delinquent personal tax-bills, of such tax-payer's proportion of said fund, shall be a satisfaction *pro tanto* of all obligations and trusts assumed by said County Court in regard to said fund. But nothing in this agreement contained shall be construed to give any tax-payer any right to sue said County Court, or the county of St. Louis, for any part of said fund, or to obligate said court for said county, to defend any suit brought against said Maguire on account of any collection by him of interest on delinquent personal tax-bills, or to indemnify him against any judgment therein.

' 4. Nothing in this agreement shall be construed to hinder said County Court, or the county of St. Louis, to refund to said Maguire, or to pay to tax-payers who may be entitled to return of interest collected on delinquent personal tax-bills, or to pay to the State of Missouri, or any corporation or body or person whatsoever, in the aggregate, any greater amount than that to be paid as aforesaid by said Maguire, into said County Court; but as soon as said fund so paid in by him shall have been exhausted by such payments or transfers to the revenue of the county of St. Louis of proper proportion of said fund, said County Court and said county of St. Louis shall be wholly free from all further liability, trust, or duty under this agreement; and should it hereafter appear that any other or greater amount than that heretofore mentioned as ascertained by a committee of said County Court, has been collected by said Maguire as interest on delinquent personal tax-bills, this agreement shall not be construed to apply to

any such hereafter-ascertained excess, but said county and said County Court, and all other parties and persons whatever, shall have, in relation thereto, the same rights and remedies as if this agreement had never been made.

' 5. The proceedings now pending on notices by the county of St. Louis to said Maguire, of motions to be made at the next term of the St. Louis Circuit Court, shall be dismissed on his paying all costs and expenses thereof, as soon as he shall have paid into said County Court the funds hereinbefore mentioned, and he assents, and engages to procure the assent of the sureties on his official bonds, to the continuance of said motions meanwhile.

' CONSTANTINE MAGUIRE.

' ST. LOUIS, May 26, 1873.'

" The petition further avers that upon the making of said agreement Maguire paid to the County Court $25,159.34, being the amount of interest collected by him on personal tax-bills (in which sum was included $717.94 in question here), less the amount involved in the State Savings Association suit, etc., which fund, amounting to $6,628.68, was deposited by the County Court, as a special fund known as ' the Constantine Maguire fund,' in the county treasury.

" That on February 12, 1877, the County Court ordered that there be paid to plaintiffs, for the tax-payers named above, sixty per cent of their respective claims, amounting to $430.50; and payment thereof was demanded of and refused by the county treasurer.

" That the Scheme and Charter went into effect on October 22, 1876, and the city of St. Louis thereby assumed the existing county debt, and on July 31, 1877, adopted the following ordinance : —

'An ordinance to authorize the mayor to enter into an agreement with the County Court of St. Louis County, as organized under the Scheme, which shall ascertain and establish the amounts belonging at this time to the city of St. Louis, and said county of St. Louis respectively, of the

balance of funds remaining in the hands of Herman Rechtien, late county treasurer of St. Louis County.

'*Be it ordained by the Municipal Assembly of the city of St. Louis, as follows:* —

' SECTION 1. The mayor is hereby authorized and directed to confer with the County Court of St. Louis as now organized under the Scheme, and to enter into an agreement on behalf of the city with said county authorities for the division between the said city and county, of the balance of all funds and assets in the hands of Herman Rechtien, late county treasurer, which, under section thirteen of the Scheme, he is required to pay into the city treasury and county treasury respectively, which agreement shall be binding on the city of St. Louis.

' SECT. 2. For the purpose of facilitating a settlement of the balance due to the city and hastening the payment thereof into the city treasury, an emergency exists; therefore this ordinance shall take effect and be in force from and after its passage.

'Approved July 31, 1877.'

'' That a board of finance was created by the County Court and the city of St. Louis to divide the funds in the county treasury, and under the operations of said board the said '*Constantine Maguire fund*' of $6,621.68 was paid to the city of St. Louis as a special fund, and is now so held by it.

'' That the board of finance refused to pay to the plaintiffs said sum of $430.50.

'' That neither Constantine Maguire, nor the former county of St. Louis, nor the present city of St. Louis, have any right to said fund of $6,621.68 ; that the same is the property of the tax-payers from whom it was wrongfully collected.

'' That on June 11, 1879, plaintiffs demanded of the city of St. Louis said sum of $430.50, and payment was refused.

'' That said Maguire is insolvent, and a judgment against him would be unavailing.

"That the fund of $6,621.68 was received by the County Court from Maguire, under the agreement of May 26, 1873, as a trust-fund for the benefit of the tax-payers entitled to the same, and is so held by the city of St. Louis, and judgment is prayed for $430.50, with interest and costs.

"Defendant interposed a demurrer, on the ground that the petition does not set forth facts sufficient to constitute a cause of action. The demurrer was sustained. Plaintiff refused further to plead, and there was judgment for defendant."

We think that the facts set forth constitute a cause of action. Defendant in error maintains that plaintiffs are precluded from having any action against the city, by the express terms of the contract with Maguire, which is not to be construed to give any tax-payer a right to sue the city; and also that the order of the County Court set forth in the petition did not create a debt in favor of plaintiffs because it is invalid, (1) because not presented to the county auditor, and, (2) because the record of proceedings of the County Court at the date of the order is not alleged to have been signed by the presiding judge.

It appears that the county collector illegally and oppressively collected interest on delinquent tax-bills on personalty, which money he retained after his term of office had expired. Whilst an action was pending in the Supreme Court on appeal, in which it was anticipated that the question of the right of the collector to receive this interest would be determined, the collector paid into the County Court of St. Louis County the money illegally collected from some of the tax-payers, to be held as a special fund to await the determination of the legal question, — the money to be deposited by the County Court, either in the treasury or in some bank on adequate security. This fund was received by the county as a trust-fund; and, on the separation of the city and county, was paid to the city of St. Louis, as a special fund to hold upon the same trusts, and

is now held by the city as a special fund. Although it may be said that a county has not a general power to receive money for any and all purposes, and that the County Court has no power to do so for the county, yet the officers of a municipality are held liable for the acts of its agents falling within the general scope of the authority conferred upon them. It was the duty of Maguire to collect the taxes; and if he collected and the county received, a tax from a person not liable, the county might be liable for the illegal tax actually received and appropriated by it; because, in the matter of collecting taxes, the collector was the agent of the county. This money, if legally collected, was payable to the county; and it was paid to the county, to be used by the county if it should be held that the collection was legal, and to be returned to the tax-payers if the decision should be against the legality of this action of the collector. Where a municipality has obtained money of another without authority of law, " it is her duty," says Chief Justice Field, in *Argenti* v. *San Francisco*, 16 Cal. 255, " to refund it, not from any contract entered into by her on the subject, but from the natural obligation to do justice, which binds all persons, whether natural or artificial. If the city obtain other property which does not belong to her, it is her duty to restore it; or, if used by her, to render an equivalent to the true owner, from the like obligations. The law, which always intends justice, implies a promise. In reference to money or other property, it is not difficult to determine in any particular case whether a liability with respect to the same has attached to the city. The money must have gone into her treasury, or been appropriated by her; and, when it is property other than money, it must have been used by her, or under her control. * * * This doctrine of implied municipal liability applies to cases where money or other property of a party is received under such circumstances that the general law, independent of express contract, imposes the

obligation upon the city to do justice with respect to the same." "It may be well doubted," says the same learned judge in another of the City Slip Cases (*Pimental* v. *San Francisco*, 21 Cal. 364), citing the language in the Mc-Cracken case (16 Cal. 591), "whether it would be competent for the Legislature to exempt the city, any more than private individuals, from liability under circumstances of this kind. Suppose, for example, the city should recover a judgment against an individual, and collect the money on execution, and the judgment should be reversed, would it be pretended that the money could not afterwards be recovered? * * * Suppose, again, an individual should pay taxes upon his property, in ignorance that they had been already paid by his agent. Could she plead her previous indebtedness as an excuse for the detention of money to which she had no legal or equitable right? * * * If this were so, she would be the most irresponsible corporation on earth, and her treasury would be in many instances but a receptacle of other's property, without possibility of execution. The truth is, there is no such exemption from liability on her part. The same obligations to do justice rest upon her as rest upon individuals."

This being so, it would seem that the contract with Maguire in regard to these illegally collected taxes was one that the county could make; and that it was within the general power of the County Court to make for her. The act of her official was erroneous in collecting these taxes; he acted on a mistaken interpretation of the statute; but, as is said in *Herzo* v. *San Francisco*, 33 Cal. 134, the city is liable for the error of her collector who collects a tax for municipal purposes from one not liable, because the collection of municipal taxes falls within the scope of his powers as collector. He is the agent of the municipality in the collection of municipal taxes. We see no reason, therefore, why the county might not receive these taxes upon the terms specified in the contract under consideration.

But if the county could and did make this contract, and if she would be liable by reason of having received and appropriated these tax-moneys, we do not see how her liability, which she expressly assumes in the contract under which she received this money, can be impaired by the clause which provides that the contract shall not be construed to give any tax-payer a right to sue the county for any part of the fund. If the tax-payer who had paid this tax could recover it without the contract; if it was legally his money, and not the money of the county; if the Legislature itself could not take away the right of a citizen to recover from a municipality what it has unjustly taken from him against his will, how can the county itself, by a contract with her agent who did the wrong in her name, debar the wronged person of the remedy which he would otherwise have had?

Nor do we think that it was necessary for petitioners to allege that the account had been presented to the auditor, or that the record of the County Court embracing the order was signed. The law provided that the Board of County Commissioners (afterwards the County Court) shall not act upon or consider any demand against the county, unless the same shall first be presented, with the evidence in its favor, to the auditor of St. Louis County, and embraced in his periodical report to the County Commissioners; and, that the records of the County Court shall be written up daily, and signed within three days, and that no order made by the County Court shall have any force or effect until the record is thus written up and signed.

If this order was material, the fact of the order was the ultimate fact to be pleaded. The fact that the order was made by the County Court, is pleaded. It will be intended a valid order. If the order was not valid it was no order. In suit for specific performance of a real contract it is not necessary to state that the contract is in writing. If a real contract, it must be so. And was an order of the County Court a condition precedent to recovery against the city?

Suppose that the County Court considered this demand without its having been presented to the auditor, and made an order for its payment which was invalid by reason of the omission of a prescribed formality, does that do away with the liability of the county? We think not. The right of the plaintiffs to recover in this action depends, not upon the fact that the county authorities recognized the claim of plaintiffs and ordered it to be paid, but upon the facts that make this demand a debt of the county when the city assumed the county debt, and that defendant, the city of St. Louis, received, as a special trust-fund from the county, the money out of which the claim in the present case is to be repaid to the persons from whom it had been illegally collected by the county.

If the county were still in existence, it may be that plaintiffs ought not to be allowed to apply in the first instance to the Circuit Court for relief, without having first applied to the county authorities to audit and allow his claim. But his right to recover depends, not upon the fact that his claim has been audited, but upon the fact that it is just, that the county received the money as trustee for plaintiffs and turned it over to the present defendant to be held upon the same trust.

We think the demurrer should have been overruled. The judgment is reversed and the cause remanded. All the judges concur.