THE MICHIGAN LAND AND IRON COMPANY (LIMITED) v. THE TOWNSHIP OF L'ANSE.

*Highway tax—Manner of assessment.*

1. Where a supervisor levied a *money* tax of half of one per cent. on the faith of the alleged action of the highway commissioner, the only *evidence* of which was a record, signed by the town clerk *alone*, showing a meeting of the supervisor, clerk, and commissioner, at which the commissioner made a motion that a tax of one-half day's *labor* be assessed on each $100 valuation for highway purposes, which was carried, and no other business transacted,—

    *Held*, that such *recorded* action was not warranted by any *statutory* provision, and that, if it means anything, it means that a *majority* of the *officers* present adopted the resolution, and not that the commissioner did so by himself.

    *Held*, further, that the record is of no value, the law imposing no duty upon the clerk to record any such action.

2. A highway commissioner, in assessing highway taxes, does so by *separate* highway lists for the several districts, prepared by himself, as provided in How. Stat. §§ 1328-1332, which lists he delivers to the several overseers, and no such tax can be levied by or under the direction of the commissioner by *parol*.

    *Held*, further, that the only way in which the amendment of 1882 (Laws of 1882, Act 10) can be made sensible is to consider it as authorizing the supervisor to spread upon the town tax roll, in *money*, the taxes assessed by the commissioner in his lists, which assessment said act *requires* him to make, and is the *only* action anywhere mentioned on his behalf for that purpose.[1]

---

[1] In 1882 the Legislature made a *radical* change in the manner of assessing and collecting highway taxes, by providing for the delivery

3. It is unlawful to raise highway taxes for the *remote* future, where the *roads* and the *necessities* therefor are *both* contingent.

So *held*, where lands situate in what had been set apart as a road district, but containing no inhabitants nor overseer, nor *actual* or *contemplated* highways, were charged with highway taxes assumed to be assessed by the commissioner of highways on a *labor* basis, distinguishing this case from *Sawyer-Goodman Co. v. Crystal Falls*, 56 Mich. 597 (head-note 2), and *Peninsula Iron, etc., Co. v. Crystal Falls*, 60 Id. 512 (head-note 9).

4. It is the policy of our law to raise taxes no faster than they are likely to be needed. It is not only important to avoid useless burdens, but the practice leads to carelessness in handling funds, and to complications when changes are to be made in districts and other territorial divisions. All reasonable presumptions may be made in favor of the necessities of a new region, but no *presumption* can stand when overthrown by *facts*.

Error to Baraga. (Williams, J.) Argued November 10, 1886. Decided November 17, 1886.

Assumpsit for tax paid under protest. Plaintiff brings error. Reversed, and judgment entered for plaintiff for amount of tax. The facts are stated in the opinion.

*Ball & Hanscom*, for appellant.

*T. L. Chadbourne*, for defendant.

CAMPBELL, C. J. Plaintiff paid under protest a large amount levied for highway tax for 1884 in the defendant township. No action had been taken by the electors, or by

---

to the supervisor of a certified copy of the record of the proceedings of the highway commissioner in assessing such tax, and requiring the supervisor to levy the amount of such *labor*, estimating the same at the rate of *one dollar* for *each* day, upon his roll, which tax was to be collected by the town treasurer, who was to keep a separate account of the same as the highway fund (Laws of 1882, Act 10, § 4, p. 39).

Section 14 of same act (p. 41) provided for the acceptance by the town treasurer of the receipt of the overseer of highways, given for labor or commutation money, in payment of such highway tax, estimating the labor at one dollar per day. This section was repealed by Act 215, Laws of 1885, p. 293, and under existing laws the old system is followed, the overseer collecting the tax assessed on his list as far as possible, and the supervisor assessing the uncollected tax on return thereof by the overseer.

the township board, on the subject.   The supervisor, on the
faith of what was alleged to be the action of the highway
commissioner, levied a money tax on plaintiff's lands of half
of one per cent.   These lands were in what had been set
apart as a road district; but it contained no inhabitants and
no overseer, and there were no highways in it, and there have
been none since.   The commissioner made no assessment, and
all that appears in writing is the so-called entry or record of
his determination to levy such an amount, not signed by him-
self, but signed by the town clerk.

Aside from other difficulties, it is a fatal objection to this
tax that there is nothing which makes it the act of the com-
missioner.   There is no statutory provision which provides
for any such action as was had here, where, according to the
record, a meeting was held of the commissioner, supervisor,
and clerk, at which the commissioner made a motion, which
is recorded as carried, that a tax of one-half day's labor be
assessed on each $100 valuation, for highway purposes; and
no other business was done, and the record was signed by the
clerk alone.   If this means anything, it means that a major-
ity of the three adopted this resolution, and not that the
commissioner did by himself.   But no duty is laid on the
clerk to record such action, and his record amounts to
nothing.

The tax was laid by the supervisor in cash, and not in labor,
and there is no explanation why this was done.   When the
commissioner assesses highway taxes, it is done by separate
highway lists, prepared by the commissioner himself.   How.
Stat. §§ 1328–1332.   These lists are made separately for the
separate districts, and delivered by the commissioner to the
overseers, which was impossible in this case.   There can be
no tax levied by the commissioner, or under his direction, by
parol.   And we find nothing authorizing a supervisor to
levy a money tax without some authority, which must also
appear of record.   No such authority appears in this case.

The only way in which the amendment of 1882, relied on to support his action, can be made sensible, is by considering it as authorizing the supervisor to spread upon the town roll, in money, the taxes assessed by the commissioner in his lists. The same amended sections recognize and require the commissioner to make such assessments, and they are the only action anywhere mentioned on his behalf for that purpose. See Laws of 1882, pp. 38, 39, compared with sections before referred to. The commissioner makes no other highway tax assessment or record, and there is no other to inform the supervisor of his determination.

It appears very distinctly here from the finding—what did not appear in the cases against the township of Crystal Falls when before us for decision[1]—that these taxes were not laid for any existing roads, or in contemplation of any intended to be opened, and that it would be impossible to use them at all in the road district where they were levied. This destroys the presumption which we thought might be raised in those cases. We do not think it lawful to raise taxes for the remote future, where the roads and the necessities are both contingent. We pointed out in *Township of Midland v. Township of Roscommon*, 39 Mich. 424, the illegality of raising taxes to be indefinitely funded.

It is the policy of our laws to raise taxes no faster than they are likely to be needed. It is not only important to avoid useless burdens, but the practice leads to carelessness in handling funds, and to complications when changes are made in districts and other territorial divisions. All reasonable presumptions may be made in favor of the necessities of a new region, but no presumption can stand when overthrown by facts.

We do not propose to discuss any questions not necessary for dealing with this record. We think the judgment is

[1]See *Sawyer–Goodman Co. v. Crystal Falls*, 56 Mich. 597 (head-note 2); *Peninsula Iron, etc., Co. v. Crystal Falls*, 60 Id. 512 (head-note 9).

erroneous, and that plaintiff is entitled to recover the whole amount of the tax paid under protest.

Judgment will be rendered accordingly, with costs of both courts.

The other Justices concurred.