THE STATE, JOHN D. NORRIS, PROSECUTOR, v. THE CITY OF ELIZABETH.

1. Under the provisions of the act entitled "An act concerning the settlement and collection of arrearages of unpaid taxes, assessments and water rates or water rents in cities of this state, and imposing and levying a tax, assessment and lien in lieu and instead of such arrearages, and to enforce the payment thereof, and to provide for the sale of lands subjected to future taxation and assessment" (*Pamph. L.* 1886, *p.* 149), the jurisdiction of the commissioners of adjustment extends to all assessments for improvements previously made and remaining unpaid, without regard to the invalidity thereof, or to the lack of power in the municipality originally to impose such assessments. Of this jurisdiction the two essentials are (1) that the improvement has been made and an assessment ascertained and imposed or attempted so to be ; and (2) that payment thereof has not been made.

2. An assessment made by municipal authority is, notwithstanding the unconstitutionality of the law under which it was made, a subsisting assessment, which, until set aside, is binding upon the city ; and the payment of such an assessment has, likewise, a binding effect upon the municipality, removing from its jurisdiction, for the purpose of levying contributions, the lands in respect to which the payment was made.

3. Where such an assessment has been paid, the party making payment cannot recover the amount paid so long as the assessment remains uncanceled ; and the municipality is not only under no compulsion to make restitution, but is without authority so to do, unless thereunto expressly empowered by the legislature.

4. Where an assessment, illegal at its inception, has been paid, and the amount so paid has afterwards been refunded by the city, the assessment not having been set aside, the action of the city, in making such repayment, does not annul the original effect of the payment, which was to extinguish the city's claim against the lands in respect to the assessment. In such a case there remains no unpaid assessment within the meaning of the act of 1886, and the commissioners of adjustment are without jurisdiction in the premises.

On *certiorari*.

Argued at February Term, 1889, before Justices MAGIE and GARRISON.

For the prosecutor, *R. V. Lindabury.*

For the defendant, *Frank Bergen.*

The opinion of the court was delivered by

GARRISON, J. This *certiorari* brings up certain questions arising under an act passed March 30th, 1886 (*Pamph. L., p.* 149), entitled "An act concerning the settlement and collection of arrearages of unpaid taxes, assessments and water rates or water rents in cities in this state, and imposing and levying a tax, assessment and lien in lieu and instead of such arrearages, and to enforce the payment thereof, and to provide for the sale of lands subjected to future taxation and assessment"—the so-called Martin act. The difficulties presented by the present case arose out of the following state of facts:

On January 8th, 1875, the title to a certain property, situate on the corner of Grand and Union streets, in the city of Elizabeth, was in John Norris. Upon this property the Mutual Life Insurance Company of New York held a mortgage, which provided, among other things, that, in case the mortgagor failed to pay all taxes, charges and assessments imposed by law upon the mortgaged premises, it should be lawful for the mortgagee to pay the same and to add the amount so paid to the debt secured by its mortgage. Prior to the execution and delivery of this mortgage the city of Elizabeth had, under the one hundred and fifth section of its charter, assessed the mortgaged premises with part of the cost of a pavement laid on one of the street lines, and, in default of payment thereof by the mortgagor, had sold the property and bought it in for a term of years. The charter of the city provided that in such cases the interest of a mortgagee should not be divested until notice and an opportunity to redeem had been given him. Such notice was given the insurance company, who thereupon paid the assessment and took an assignment of the city's right against the mortgaged premises. At the time these transactions took place the assessment was regarded as valid. Subsequently, however, the validity of a similar

assessment was called in question in the Court of Chancery, by a bill filed by one Bogert, to annul a sale made thereunder, as a cloud upon his title. Upon the appeal of this case the Court of Errors and Appeals declared the one hundred and fifth section of the charter of the city of Elizabeth to be entirely nugatory, and that all proceedings under it were not mere irregularities, but absolute nullities. *Bogert* v. *City of Elizabeth,* 12 *C. E. Gr.* 568.

After this decision was made public the Court of Chancery, still having before it the question of the right of the insurance company to tack to its mortgage debt the amount paid the city for the assessment on the mortgaged premises, decreed that such a right did not exist, inasmuch as the sum so paid was not for an assessment imposed by law, and ordered the surplus money which had been retained in court pending the dispute to be paid to John D. Norris, who held a subsequent mortgage, and who was also the purchaser at the foreclosure sale. After this issue had been settled adversely to it, the insurance company, in March, 1878, made demand upon the sinking fund commissioners of the city of Elizabeth to refund the money so paid upon said illegal assessment, which the commissioners did, acting solely upon their own authority and without any affirmative action in the premises by the city council of Elizabeth.

In this shape the matter rested until 1888, when the commissioners of adjustment of the city of Elizabeth, acting under the provisions of the act above cited, filed a report of certain adjustments of taxes and assessments, containing, amongst others, an adjustment and imposition of the sum of $2,694.15 in lieu of the said assessment, the amount of which had been so refunded as aforesaid by the sinking fund commissioners to the insurance company in 1878. To this report objections were filed by John D. Norris, as owner of the lands affected, upon the ground :

*First.* That the assessment had been paid.

*Second.* That at the time of the sheriff's sale the said assessment was marked " paid " on the city's books, and that the

refunding by the sinking fund commissioners was without authority from the common council of the city.

*Third.* That the original assessment had never been set aside.

*Fourth.* That there was no assessment in existence to be adjusted.

These objections were overruled by the Circuit Court of the county of Union for the following reasons, which come up with the writ in this case :

" I shall overrule the objections of John D. Norris to the confirmation of this report for the following reasons :

" The facts stated in 4 *Stew. Eq.* 583 (which, by agreement of counsel, are made part of this case) show that the assessments were never in fact paid.

" The mortgagee advanced to the city the amount of the assessments, and took an assignment of the right of the city against the mortgaged premises. It was not intended to extinguish the assessment by payment of it, but to continue its lien and enable the mortgagee to enforce it against the property.

" The right of the sinking fund commissioners to refund to the mortgagee the amount paid for the assessments cannot be challenged by Norris. By taking the proper legal steps, the money could have been recovered from the city by the mortgagee, and it must be presumed that the city has ratified the act of the sinking fund commissioners by acquiescing. There was, therefore, in the case, an arrearage within the meaning of the Martin act.".

The report of the commissioners of adjustment having been thus ratified and confirmed by the order of the Circuit Court, John D. Norris sued out this writ of *certiorari* removing the said order into this court, and assigning substantially the same reasons for its reversal which had been previously urged as grounds for setting aside the report, with one additional ground, viz., that the foreclosure sale had annulled and destroyed the said assessment.

The jurisdiction of the commissioners of adjustment under the act of 1886 extends to all assessments for improvements previously levied by any city and remaining unpaid, without regard to the invalidity thereof or to the lack of power in the municipality originally to impose such assessments. The general purpose of the act, as stated in its preamble and shown in its provisions, is, that land once benefited by any authorized public work shall not escape the payment of its proportionate share of the expenses thereof. To this end, the legislature ordained that any levy or ascertainment and attempted imposition of the sum for which any lands benefited by an improvement should be liable, should, in the event of such sum remaining unpaid, give jurisdiction to the commissioners of adjustment for the purpose of determining whether the whole of such sum or only a part thereof, and, if so, what part, should be enforced against the improved property as and for the payment of its share of the value thus imparted to it. Certain rules are laid down for the governance of the commissioners, but the essentials of jurisdiction are: (1) That the improvement has been made and an assessment ascertained and imposed or attempted so to be; and (2) that payment thereof has not been made. Where these two elements co-exist the power of the commissioners to proceed in the premises is assured, without any regard to the partial or entire nullity of the authority under which an abortive attempt at the imposition of an assessment may originally have been had. *Re Commissioners of the City of Elizabeth*, 20 *Vroom* 488.

In the case now before us an assessment was made by the city under the law contained in its charter, and supposed, at that time, to confer power for that purpose. The amount for which the lands in question were liable was ascertained, although upon a wrong principle, and the final condemnation of the law by the Court of Errors and Appeals, in the case of *Bogert* v. *The City of Elizabeth, supra*, left the matter ripe for the interposition of the commissioners of adjustment, under the act of 1886, so far as the first element of their jurisdiction is concerned.

The foreclosure proceedings in 1875 could not have had the effect of discharging the land from the payment of its proportionate assessment for benefits. The issue in that case as raised by the bill, was not whether the city should go unpaid for the improvements, but whether the mortgagee who had paid the city should tack the amount so paid to his mortgage debt. Similarly, in this dispute over the surplus money, the decision was, that the assessment, although paid in fact, had been illegally imposed, and that, hence, recovery therefor, as between the parties, could not be had under the terms of the mortgage. During these proceedings the city was, it is true, a party, yet, having been paid its demands, was not interested in any issue presented to the court for determination. It was not affected by the decree in the foreclosure suit nor by the decretal order as to the surplus fund. So far as the existence of an attempted assessment is required to confer jurisdiction on the commissioners the right of the city to invoke their powers is clear.

We are thus brought to the consideration of the remaining question in the case, viz., was the original assessment unpaid at the time the commissioners of adjustment assumed to act in the premises.

There is no dispute over the facts. The insurance company, as mortgagee, paid the city its claim and took an assignment of it. The assessment was never set aside, either by municipal action or by judicial authority. The refunding to the insurance company of the amount paid was made by the sinking fund commissioners upon their own responsibility, not in obedience to the order of any court or in satisfaction of any process of law.

Upon these undisputed facts the contention of the city is, that, inasmuch as the section of its charter upon which the assessment rested had been pronounced an absolute nullity by the Court of Errors and Appeals, the city authorities were justified in recognizing the force of that decision and in making restitution accordingly, without waiting to incur the additional costs of a *certiorari*.

These views, which were adopted by the Circuit Court, constituted the chief ground of discussion upon the argument before us.

In view of the facts above recited, it is evident that the question presented for determination is this : Is the sum of money which the city, through the commissioners of adjustment, is seeking to collect in lieu of an assessment which remains unpaid, or is it instead of an assessment once paid to the city and by it gratuitously returned to the insurance company.

The solution of this question depends upon the effect to be given to the action of the city in refunding to the insurance company the amount of the assessment previously paid by it. The assessment in question was, notwithstanding the unconstitutionality of the law under which it was made, a subsisting assessment, which, until set aside, was legally binding upon the city, and the satisfaction of which would operate as an extinguishment of the liability of the owner of the lands to contribute further for the same apportionment. *Hill* v. *Elizabeth,* 10 *Vroom* 555.

The payment of such an assessment has likewise, therefore, a binding effect upon the municipality, removing, as it does, from its jurisdiction to levy contribution, the lands in respect to which the payment was made. Conversely, the party making the payment which has brought about this result can by no act of his, unaided by judicial authority, restore to the municipality the jurisdiction which, by the fact of payment, it has lost. Nor can the co-operation of the parties to the payment bring about this result. No matter how illegal may be the assessment thus paid, so long as it remains uncanceled the relations of the party and of the municipality remained fixed by the act of payment. Until the assessment be set aside, the party cannot recover his money and the city cannot further follow the property in respect to the claim thus paid. The decision of this court in the case of *City of Elizabeth* v. *Hill,* 10 *Vroom* 555, followed by *Davenport* v. *City of Elizabeth,* 12 *Id.* 362, and *Fuller* v. *City of Elizabeth,* 13 *Id.* 427, in the

Court of Errors, must be considered as placing this question beyond present dispute.

To quote from the language of Beasley, C. J., in the last cited case: "If the assessment be illegal, it must be resisted in a direct proceeding for that purpose. If it be allowed to stand, and the money paid which is called for by it, the party so paying loses all remedy for the illegal exaction. Nor does it help the matter that he paid under protest." The position of the insurance company, therefore, when it demanded from the city a restoration of the amount of the assessment paid by it, which remained unannulled, was that of one having no legal claim whatsoever against the city. It was, in effect, attempting to do by the co-operation of the municipal authorities that which the law forbids to be done save by judicial or legislative interposition. And the city, in now relying upon the effect of this refunding, is seeking to avail itself of its own illegal participation in this transaction; for it cannot be but that the payment binds the city in respect to the property assessed, as well as the party in respect to the money paid. The city has, therefore, no more power to release itself from the effect of the payment than the party has to recover the money he has paid. To hold otherwise would be to license city councils, after a lapse of years and changes in legislative methods, to revive liens once extinguished by operation of legal payment, shifting the burden of municipal indebtedness from one owner of city property to a subsequent purchaser, according as interested motives or an untrammeled sense of natural justice might dictate. Obvious grounds of public policy require that municipalities should not be permitted, by the aid of a person to be financially benefited thereby, to play fast and loose with the encumbrances upon property within their limits.

It was suggested that the city had the power to rescind its assessments, and that in the present case, by the act of refunding, it practically exercised that power. The effect of this contention, if true, would be to place the city in this dilemma: that if it rescinded its assessment, then there is none to be

readjusted; while, if it did not rescind it, there was no authority to refund, and, hence, the assessment remains paid and discharged. But it is quite evident, that the city did not possess any special power to so deal with its assessment, and it is equally clear, that it did avail itself of the general powers given by the legislature to cities in this regard. That the city council of the city of Elizabeth possessed no such power as incidental to their general functions, was evidently the opinion of Chief Justice Beasley, delivering the decision of the Court of Errors in the case of *Campion* v. *City of Elizabeth,* 12 *Vroom* 355, where the following language is used : "It cannot be conceded that the city council could rescind an assessment which has been consummated by payment without some special authority to that end derived from legislation." There existed, it is true, at the time this repayment was made by the city, certain general acts of the legislature formed with the obvious purposes of meeting cases where illegal assessments had been innocently paid. I refer to the acts for the refunding by municipal corporations of moneys paid upon assessments in certain cases. *Pamph. L.* 1877, *pp.* 23, 55. These enactments, whether read singly or construed together, so clearly contemplate and require action by the municipality setting aside the old assessment and deferring the refunding of the sum thereon paid until a new assessment could be made, that it cannot be useful to consider them at length in connection with a state of facts which discloses none of these elements. As they were mentioned, however, upon the argument, I thus briefly refer to them.

An idea seems to have prevailed in the proceedings before the Circuit Court, that the insurance company did not in fact pay the assessment, but merely advanced to the city the amount of the assessment, not with the intention of extinguishing the assessment, but only for the purpose of continuing its lien and enforcing it against the property. This notion appears to be effectually rebutted by the use which the insurance company at once made of its settlement of the assessment, which was to include it in its claim against the mort-

gaged premises in the foreclosure suit, not as the assignee of the city's right to a term of years in the property, but under a distinct covenant in the mortgage which extended only to sums of money actually paid for assessments, taxes, &c.   As the conduct of the parties to this transaction is the only evidence before us of their intentions, this would seem conclusive as to the intention of the insurance company at the time. That the city likewise so regarded it, is shown by the fact that, in repaying the sum, it did not take back an assignment of the term, as it would have done had the previous transaction been in the nature of an advance only.   There is nothing in the case, as it appears to me, to warrant such an assumption.

The conclusion which we reach is, that the payment of the assessment by the insurance company was a legal extinguishment of the city's claim against the land in question; that it must remain so until the assessment itself be annulled; that until that be done, the insurance company could not recover from the city the money so paid, nor could the city render nugatory the legal effect of the payment to it—that the payment by the city to the insurance company of a sum of money equal to the amount paid on the assessment is without legal significance, and that the city did not thereby acquire the substantial rights it is now seeking to enforce.   In the present posture of affairs there remains no unpaid assessment in respect to the lands of the prosecutor.   The commissioners of adjustment were, therefore, without jurisdiction to make the adjustment complained of.

The order of the Circuit Court ratifying the report of the commissioners in this particular must be reversed, and the item in controversy stricken out, with costs.