OTTAWA LUMBER CO *v.* MAYOR OF HARBOR SPRINGS.

1. TAXATION—JUDGMENT AGAINST CITY—PART PAYMENT BY UNITED
   STATES—REFUND TO TAXPAYER—EQUALLY DIVIDED COURT.
   Order granting taxpayer a writ of mandamus to compel mayor
   to sign check for such portion of judgment, assessed against
   petitioner's property, which had been paid city by the United
   States for death of its employee is affirmed by an equally di-
   vided court.

2. COSTS—PUBLIC QUESTION.
   No costs are allowed on appeal in nature of certiorari from order
   granting writ of mandamus to taxpayer to compel payment by
   city of portion of judgment which had been assessed against
   his property and subsequently paid by the United States to
   city, a question of public concern being involved.

Appeal from Emmett; Sprague (Victor D.), J.
Submitted September 1, 1939.   (Calendar No.
40,260.)   Decided November 9, 1939.

Petition by Ottawa Lumber Company, a Michigan
corporation, for a writ of mandamus to compel Eder
C. Matthews, as Mayor of the City of Harbor
Springs, a municipal corporation, to execute a
voucher and warrant. Writ granted. Defendant re-
views by appeal in the nature of certiorari. Af-
firmed by an equally divided court.

*B. H. Halstead,* for plaintiff.

*Starr & Starr,* for defendant.

POTTER, J.   July 26, 1922, one Haynes, employed
by the United States department of agriculture, was

killed in Harbor Springs. Suit was instituted against the village (now city) which resulted in a judgment of $25,133.95. The assessing officer levied a general tax to pay the judgment. Plaintiff owned property in the village and paid $312 toward the liquidation of this judgment, which the village paid in full. Subsequently the village presented a claim to the United States court of claims. Upon a finding of joint liability, congress authorized payment of one-half the amount of the judgment, plus interest, to the village, and the secretary of the treasury paid $23,170.19 to the village, which is now in its possession, to satisfy one-half of the judgment. Plaintiff presented a claim to the city council for the amount of taxes paid by it toward the satisfaction of the judgment satisfied by the payment received from the United States government. This claim was audited and allowed by the council August 2, 1937, and a voucher and warrant drawn and presented to the mayor for signature which he refused to sign. Plaintiff instituted mandamus to compel the mayor to countersign the warrant. The trial court directed the issuance of the writ, and the case is brought here by defendant by appeal in the nature of certiorari.

The law favors honesty in public and private affairs. This court has said that the obligation to do justice rests upon all persons, natural and artificial, and if a city obtain and hold money equitably belonging to others, the law, independent of any statute, will compel restitution or compensation. *Blanchard* v. *City of Detroit,* 253 Mich. 491. A general right exists, independent of statute, to a refund of taxes which, though legal at the time paid, by subsequent events are shown to have become inequitable.

A city has the right to manage its own legal affairs in its own way so long as it does so within the limits

of the Constitution and statutes providing for its creation. *Bowler* v. *Nagel,* 228 Mich. 434 (37 A. L. R. 1154).

The charter of the city of Harbor Springs authorizes it to do any act to advance the interests of the city and the good government and prosperity of its inhabitants, subject only to the constitutional and statutory restrictions imposed thereon.

A general right exists to refund any sums paid as corporate taxes if found to have been wrongfully exacted *or believed to be for any reason inequitable.* 2 Cooley on Taxation (3d Ed.), p. 1396.

Where an excessive amount of taxes has been received for a specific purpose which cannot lawfully be used for that purpose, the city should equitably refund such excess amounts, which it holds as trustee for the taxpayers, to them. 44 C. J. p. 1342.

In legal contemplation, the city receives the money for the use and benefit of claimants and should pay it to them accordingly. *Ward* v. *Board of County Commissioners of Love County,* 253 U. S. 17 (40 Sup. Ct. 419).

Where an excess amount has been collected for taxes under a mutual mistake of fact, such excess is always recoverable back. *Betz* v. *City of New York,* 119 App. Div. 91 (103 N. Y. Supp. 886).

The money here in controversy was raised and paid upon an honest belief upon the part both of the village and of the taxpayer that it was necessary to be so raised and paid. Subsequent events indicated both parties were mistaken and that a lesser amount would have been sufficient to discharge the specific obligation upon the village, for the money received from the United States government paid and discharged one-half of the obligation for this specific judgment. Why should not the taxpayers to

whom such money equitably belongs have repayment of such excess amounts as they have paid?

"The people in their collective capacity as a municipality ought to observe the same rules of honesty and fair dealing that they would demand of each other under like circumstances in their individual dealings." *Roberts* v. *Boise City,* 23 Idaho, 716 (132 Pac. 306, 45 L. R. A. [N. S.] 593).

The money raised "is a special fund created for a special purpose outside of the ordinary revenues of the town; * * * a trust fund, and must be applied to the purpose for which it was raised." *Town of Aurora* v. *Railroad,* 19 Ill. App. 360.

"It is the policy of our laws to raise taxes no faster than they are likely to be needed." *Michigan Land & Iron Co.* v. *Township of L'Anse,* 63 Mich. 700.

Money received by a municipality for a specific purpose should be inviolably applied to the purpose for which it was paid.

"It seems eminently just that this money, collected by the city in excess of its needs as determined by the constituted authorities, should be returned to those upon whom the unnecessary burden was imposed, and no merely technical objection should stand in the way of this consummation." *Madary* v. *City of Fresno,* 20 Cal. App. 91 (128 Pac. 340).

Every city has the implied power to be honest, to deal fairly with its inhabitants, and if it received money which in equity and good conscience it ought not to retain, the law regards it as holding it for the use and benefit of the persons to whom it, in equity, belongs and raises an implied promise to pay it over to the owner. *George's Creek Coal & Iron Co.* v. *Allegany County Commissioners,* 59 Md. 255.

The tax here in question was regular when levied and no protest was necessary to accompany the payment of the tax because such protest under the circumstances would have been useless. 61 C. J. p. 993. Believing it to be equitably entitled to a refund of the amount of general taxes levied and assessed against its property and paid for the specific purpose of discharging the judgment against the village, plaintiff presented a claim to the common council. The common council recognized that honesty and fair dealing required a refund of the taxes levied, one-half the amount of the judgment having been paid to it by the government of the United States. The audit and allowance of plaintiff's claim was, under the circumstances, conclusive. 44 C. J. pp. 1448, 1449. It thereupon audited and allowed the claim and directed an order or warrant to be issued for the payment thereof. It had a lawful right to audit this claim, and the effect of the audit was to determine and fix definitely the amount to which plaintiff was entitled. The duty of the mayor to countersign the order or warrant was purely ministerial. 38 C. J. p. 767. Having the duty to do so, acting within the scope of his authority the mayor of the city should countersign the warrant, and if he refuses may be compelled by mandamus to do so. 38 C. J. p. 784.

The judgment of the trial court is affirmed, but without costs, a public question being involved.

WIEST, BUSHNELL, and SHARPE, JJ., concurred with POTTER, J.

WIEST, J. The claim of the city against the Federal government, the allowance thereof by congress, and receipt of the money thereunder by the city earmarked the fund for a specific purpose.

Common fairness in the premises needs no statutory authorization, nor the command to do the right thing, legislative spur.

Diversion of the fund to general municipal purposes, rather than reimbursement of taxpayers who were constrained to pay the judgment, is manifestly wrong, and the action of the city common council merits judicial support.

BUSHNELL, SHARPE, and POTTER, JJ., concurred with WIEST, J.

CHANDLER, J. On July 26, 1922, Ernest H. Haynes, an employee of the United States department of agriculture, was killed by coming in contact with a wire forming a part of the distribution system of the municipal electric light plant owned and operated by the village (now city) of Harbor Springs. The administratrix of his estate instituted an action to recover damages for the death, which resulted in a judgment against said village in the sum of $25,133.95.

Pursuant to the provisions of 3 Comp. Laws 1929, § 14690 (Stat. Ann. § 27.1654), the assessing officer of the village caused the amount of the judgment, interest thereon, and costs to be spread upon the tax roll, designating said assessment as the "Haynes Judgment." At that time plaintiff was the owner of certain real property located in the village and was required to pay that portion of the assessment levied against such property in the sum of $312.

Subsequently, pursuant to authority granted by the congress of the United States, the village presented a claim to the United States court of claims, on the theory that the United States was jointly liable for the death of Ernest H. Haynes, occurring as aforesaid. This action resulted in a finding by

the court of claims on October 20, 1930, that the United States, if suable, was liable as a joint tort-feasor with the village for the death.*    Based upon this finding, an act of congress, approved by the president on June 14, 1935, directed the secretary of the treasury of the United States to pay to the village of Harbor Springs a sum of money equal to one-half of the judgment rendered, with interest, together with expenses incurred in defending the action and the prosecution of the claim before the court of claims.    In compliance therewith, the secretary of the treasury paid the sum of $23,170.19 to the village, which fund is now held by the treasurer thereof.    Subsequent thereto, and after certain deductions, plaintiff presented to the council of said city a claim for the amount paid by him as taxes toward satisfaction of the Haynes judgment, which claim was approved by the local legislative body on August 2, 1937.    A voucher and warrant was presented to the mayor for signature, which he refused to sign.

Plaintiff then instituted this proceeding to obtain a writ of mandamus ordering the mayor to execute the mentioned documents.    The trial court issued an order to show cause and upon hearing thereof entered a judgment authorizing the issuance of a writ. This appeal is taken from the order so entered.

Plaintiff seeks to compel the city of Harbor Springs to reimburse him, out of a fund paid to said city by the United States as its contribution toward the Haynes judgment, an amount collected from him as taxes at the time the judgment was satisfied.    The fund contributed by the United States was paid to the city of Harbor Springs and became the property of said city and plaintiff has no right, title or interest

---

* *Village of Harbor Springs, Michigan,* v. *United States,* 72 Ct. Cls. 32.—REPORTER.

therein. In the absence of constitutional authority, which does not exist in this jurisdiction, a municipal corporation has no power to donate its real or personal property for private purposes. 43 C. J. p. 1345, § 2104. This proposition is obviously controlling in the instant case, for to reimburse plaintiff and others similarly situated would constitute an unauthorized gift by the municipality to them of public funds for private purposes.

Plaintiff argues that when congress authorized payment by the United States to the city of Harbor Springs of the fund in question, he and other taxpayers who contributed to the satisfaction of the judgment became beneficiaries of the fund. The congressional enactment provides in part, "that the secretary of the treasury is hereby authorized and directed to pay to the village of Harbor Springs, Michigan," et cetera. It also provides that "such payment shall be in full satisfaction of all claims of the village of Harbor Springs against the United States on account of the death of Ernest H. Haynes." We find nothing in the language used that would create a trust in favor of plaintiff as a beneficiary thereof. The payment was authorized to be made to the village; obviously upon transfer of the fund the village became the owner thereof.

Inasmuch as plaintiff has no interest in the fund in question, and because the municipality has power only to use public funds for public purposes, it follows that the writ of mandamus should not have been authorized.

Judgment should be reversed. No costs are allowed as a public question is involved.

BUTZEL, C. J., and NORTH, and McALLISTER, JJ., concurred with CHANDLER, J.

North, J.  For the reasons hereinafter indicated I concur with Justice Chandler's holding that the order of the circuit court granting the writ of mandamus should be reversed.  There is no question but that the funds necessary to satisfy the judgment rendered against Harbor Springs were obtained through the levy of general taxes.  3 Comp. Laws, 1929, § 14690 (Stat. Ann. § 27.1654).  It was not a special assessment.  The judgment when rendered was a judgment against the municipality only, not against the taxpayers.  Aside from constitutional provisions, cities and villages have only such powers as the legislature expressly confers upon them or as are necessarily or reasonably inferred from expressly conferred powers.  *Barnhart* v. *City of Grand Rapids,* 237 Mich. 90; *City of Kalamazoo* v. *Titus,* 208 Mich. 252; *Attorney General* v. *Detroit Common Council of the City of Detroit,* 150 Mich. 310 (121 Am. St. Rep. 625); 1 Dillon on Municipal Corporations (5th Ed.), p. 448 *et seq.,* § 237.  Nowhere in our Constitution or statutes is there an express provision, nor is there a necessary or reasonable inference from express provisions, that the city of Harbor Springs (or the former village) has or had the power to redistribute to taxpayers any money collected by the process of general taxation. In the absence of such provision the municipality has neither the right nor power to return funds obtained through general taxation.

"A public corporation may refund a voluntary payment of an assessment (meaning general tax) if statutory authority for such payment exists, but in the absence of such statutory authority a city cannot refund such payments."  2 Page & Jones on Taxation by Assessment, p. 2135.

"It cannot be conceded that the city council could rescind an assessment (of a general tax) which has

been consummated by payment without some special authority to that end derived from legislation." *Norris* v. *City of Elizabeth,* 51 N. J. Law, 485 (18 Atl. 302).

As bearing somewhat upon the same principle of law but particularly pertaining to exemptions, Cooley on Taxation has said:

"Pertaining as it does to the sovereign power to tax, the municipalities of the State have not the exempting power except as they are expressly authorized by the State. A municipal corporation has no inherent power to grant exemption, nor to commute taxes. However the legislature may delegate to a municipality the power to make particular exemptions; the power delegated to municipal corporations to tax does not include power to exempt." 2 Cooley on Taxation (4th Ed.), p. 1398.

See, also, 5 McQuillin on Municipal Corporations (2d Ed.), p. 695 *et seq.,* § 2215.

It is true that some municipalities have the power to return to those who have paid a special assessment the amount collected in excess of that required by the special purpose for which the assessment was levied. But this is due to the fact that these municipalities are given the power to refund such excess in special assessments by express statutory or charter provision. 1 Comp. Laws 1929, § 2050 (Stat. Ann. § 5.1845). *Thayer* v. *City of Grand Rapids,* 82 Mich. 298. It would seem to be a necessary inference that if the legislature intended municipalities should have the power to return money collected incident to general taxation, it also would have been expressly conferred by statute. But, as held in the above cited authorities, in the absence of such express provision municipalities have no power to return to taxpayers

money collected as a general tax. This court has held:

"A bill praying for an accounting, and that certain tax moneys levied and collected under a misapprehension of the requirements of the statute, but which were paid from year to year without protest, be returned to the taxpayers, cannot be sustained, there being no averment of any fraud in the assessment or levy of the taxes." *Manistee Lumber Co.* v. *Township of Springfield* (syllabus), 92 Mich. 277.

There is nothing that savors of dishonesty or that is inequitable arising from the municipality's retention of this fund. The like amount was originally obtained by spreading taxes at large. Its retention will reduce to that extent the amount that it would otherwise be necessary to collect in current taxes. And, further, retention of the fund will relieve the municipality of the expense and the practically unaccomplishable task of finding the numerous persons who paid this tax in 1926 and of parceling out the varying sums of the *pro rata* return.

Under this record the circuit judge's order granting mandamus should be reversed. This being a question of public concern, no costs will be granted.

BUTZEL, C. J., and CHANDLER and McALLISTER, JJ., concurred with NORTH, J.