# Richmond.

TOWN OF PHOEBUS v. MANHATTAN SOCIAL CLUB.

March 1, 1906.

Absent, Cardwell, J.

1. SOCIAL CLUBS—*License Tax—Right of Municipalities to Tax.*—The general revenue laws of the State which impose a specific tax on social clubs which keep on sale ardent spirits or mixtures thereof to be sold or given to its members, and which provides that such tax shall be "in lieu of all other taxes upon such corporation for selling or giving away materials above enumerated," does not exempt such clubs from municipal taxation. The law relates exclusively to taxes to be paid to the State, and there are no considerations of reason or justice for exempting them from municipal taxes for which no commutation is provided, and which are wholly independent of the tax to the State.

2. SOCIAL CLUBS—*License Tax—Powers of Cities and Towns—General Law.*—Independently of charter powers, a city or town of this State may impose a license tax on a social club selling or giving ardent spirits to its members, under section 1042 of the Code, which provides that "in addition to the State tax on any license, the council of a city or town may, when anything for which a license tax is so required is to be done within the city or town, impose a tax for the privilege of doing the same, and require a license to be obtained therefor."

3. DISTINCTION BETWEEN LICENSE AND TAX—*Fees Charged to Social Clubs.*—If a fee is imposed for the purpose of regulation, and other conditions are to be complied with as a prerequisite to doing business, such fee is a license imposed by virtue of the police power; but if the fee is exacted for revenue only and its payment gives the unconditional right to carry on the business for which the fee is required, it is a tax. Tested by this rule, the fee imposed upon social clubs selling or giving ardent spirits to its members has all the elements of a license.

4. Payments Under Protest—*Recovery Back.*—The mere filing of a written protest at the time an illegal tax is paid does not constitute such a payment under protest as will warrant its recovery back where it does not appear that any one authorized to receive payment has demanded payment thereof, or has brought any pressure to bear to enforce payment, or is making any effort to collect it.

Error to a judgment of the Circuit Court of Elizabeth City county, in an action of assumpsit. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*W. H. Power* and *O. D. Batchelor,* for the plaintiff in error.

*S. J. Dudley* and *B. A. Lewis,* for the defendant in error.

Buchanan, J., delivered the opinion of the court.

The Manhattan Social Club instituted an action of assumpsit against the town of Phoebus to recover back a license tax.

In order for the plaintiff to maintain its action it was necessary to show (1st) that defendant had no authority to impose the tax; (2d) that it actually received the money paid (this is conceded); and (3d) that the payment was *not voluntarily* made.

By section or clause 142 of chapter 148 of an act approved April 16, 1903, known as the State revenue act (Acts 1902-'03-'04, pp. 155, 226), it is provided, among other things, that any corporation chartered as a social club, which shall desire to keep on hand at its club-house or other place of meeting, wines, ardent spirits, or any mixture thereof, alcoholic bitters, bitters containing alcohol, or fruits preserved in ardent spirits, to be sold directly or indirectly, or given away to the members

of such corporation, shall on or before the thirtieth day of April of each year pay to the treasurer of the county or corporation wherein the club-house or other place of meeting is situated, two dollars for each and every person who is a member of such corporation, which shall be in lieu of all other taxes upon such corporation for selling or giving away to its members ardent spirits or any of the mixtures or materials above enumerated; provided that the tax to be paid by any one club shall not exceed the sum of three hundred and fifty dollars.

The plaintiff insists that the act imposing the tax on social clubs, by expressly providing that the taxes imposed by the State should be in lieu of all other taxes for the privileges granted, was intended to exempt such clubs from municipal taxation. While the language of the statute is very comprehensive it does not, in our opinion, sustain the claim of the plaintiff, under the decisions of this court in the cases of *Orange, &c., R. Co.* v. *Alexandria,* 17 Gratt. 176, and *Humphreys* v. *City of Norfolk,* 25 Gratt. 97. In those cases, as in this, the language relied on by the parties seeking to escape taxation was sufficiently comprehensive, if regard was paid only to its literal sense, to exempt them from all other taxes, both State and municipal. But the court in both cases was of opinion that the act to which the sections under consideration belonged, respectively, was a general law imposing taxes for the support of the government, and related exclusively to taxes to be paid to the State; and that there were no considerations of reason or justice in either case (as there are not in this) which required that the exemption should be extended to municipal taxes, for which no commutation was provided, and which were wholly independent of the tax to the State. The reasoning of the judges delivering the opinions in those cases applies with peculiar force to the case under consideration.

The next contention of the plaintiff is that even if the act in question does not prohibit such tax, the defendant has no authority under its charter to tax social clubs.

Without discussing the extent of the taxing power of the defendant under the provisions of its charter (Acts of Assembly 1899-1900, pp. 98-103), which are very broad, it is clear, we think, that it has the power to impose the tax in question, under section 1042 of the Code, which provides that "In addition to the State tax on any license, the council of a city or town may, when anything for which a license tax is so required is to be done within the city or town, impose a tax for the privilege of doing the same and require a license to be obtained therefor . . . ."

While the tax imposed by the State upon social clubs is not called a license tax in the act under consideration it is so designated in the act approved March 12, 1904 (Acts 1904, p. 214), the statute now in force upon the subject. It is sometimes difficult to determine whether a sum imposed by statute is a license fee proper, or a tax. In order to determine that question it is generally necessary to ascertain the purpose of the exaction and to determine the power by virtue of which it is made.

One of the latest text-books on the subject (21 Am. & Eng. Ency. Law, 2d ed., 773-775) in discussing the differences between a license fee proper and a tax, says that "where the fee is imposed for the purpose of regulation, and the statute requires compliance with certain conditions in addition to the payment of the prescribed sum, such sum is a license proper, imposed by virtue of the police power; but where the fee is exacted solely for revenue purposes, and payment of such fee gives the right to carry on the business without the performance of any further conditions, it is a tax." This statement of the law seems to be fully sustained by the decisions of the courts.

The fee imposed upon social clubs has all the essential elements of a license tax. Its object is to regulate the sale of ardent spirits and intoxicating mixtures. The statute imposing the tax requires compliance with certain conditions to prevent a forfeiture of the charter of such club; it provides to whom such articles may be sold or given away; that the club-house or meeting place of the club shall not be located in a building in which there is a licensed public bar; the hours during which the club-house or meeting place may be kept open; for reporting to the clerk of the court of the county or corporation in which the club-house or meeting place is located, monthly, a list of its members, and annually a list of its officers for the ensuing year; for the minimum entrance fees and monthly dues which shall be charged and collected, and declares that for a wilful or negligent failure on the part of the social club to comply with said requirements it shall forfeit its charter.

But even if the defendant had no authority to impose the license tax in question, the record does not show that it was not voluntarily paid. The circumstances under which the plaintiff paid are shown by the facts agreed, which upon this question are as follows: "That it paid the town of Phoebus 'under protest' two hundred and seventy-six dollars and seventy-four cents, October 15, 1903, for license commencing October 10, 1903, and expiring April 30, 1904. The 'protest' referred to was in the form of a declaration made by the club to the town recorder at the time the license was issued, and which protest appears noted in stub of license book in recorder's office in these words: 'Paid under protest.' "

The common law doctrine governing cases of this kind is stated as follows by the Supreme Court of the United States, in *Lamborn* v. *Dickenson County,* 97 U. S. 181, 24 L. Ed. 926: "Where a party pays an illegal demand with a full knowledge

of all the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary, and cannot be recovered back.   And the fact that the party, at the time of making the payment, files a written protest does not make the payment involuntary."

The reasons for this apparently harsh doctrine, and the difficulties which would result from a different rule, are stated by Judges Carr and Tucker with great clearness and force in *Mayor, &c., of Richmond* v. *Judah*, 5 Leigh, 305.   See 2 Dillon on Mun. Corp. (4th ed) sec. 944; 2 Cooley on Taxation (3d ed.), p. 1499, 27 Am. & Eng. Ency. of Law (2d ed.) 760, and cases cited; *Lincoln* v. *City of Worcester* (Mass.), 8 Cush. 55, 66.

Judge Dillon, in his work on Municipal Corporations (4th ed.), volume 2, section 940, states that the same principles are applicable to actions for the recovery of money paid for illegal license taxes or fines imposed by a municipal court; and his statement is sustained by Judge Cooley in his work on Taxation (3d ed.), volume 2, page 1499.   *Emery, &c.,* v. *City of Lowell,* 127 Mass. 138; *Town Council of Cahaba* v. *Burnett,* 34 Ala. 400; *Douglas* v. *Kansas City,* 147 Mo. 428, 48 S. W. 851.

All payments are presumed to be voluntary until the contrary is made to appear.   2 Cooley on Taxation, page 1499; 27 Am. & Eng. Ency. Law 762.   The burden of proof was therefore upon the plaintiff to show that its payment was not voluntary. The mere declaration of the plaintiff when it made payment, that it was made under "protest" does not show that it was not voluntarily made.   There is no evidence that the recorder of the town, who issued the license and noted the plaintiff's protest, was authorized to receive the payment made, or that he did

receive it, or that he in any way brought any pressure to bear upon the plaintiff to compel payment of the license tax, or had any power to do so, or that any other official of the defendant town demanded payment therefor, or was making any effort to collect it.

In *Union Pac., &c., R. Co.* v. *Commissioners, &c.,* 98 U. S. 541, 25 L. Ed. 196, it was held by the Supreme Court of the United States that the payment of taxes under a written protest, without a demand therefor or an effort to collect the same, did not make the payment a compulsory one in such sense as to give the party paying the right to recover the amount thereof.

In *Douglas* v. *Kansas City, supra,* it was held that an illegal license tax was not recoverable where there is no evidence of threats or notification to pay. Neither can a party claim that he paid a license tax under compulsion merely because of liability to fine and imprisonment in the event he did not pay. *Town Council of Cahaba* v. *Burnett,* 34 Ala. 400. See also *Emory* v. *Lowell,* 127 Mass, *supra.*

We are of opinion, therefore, to reverse the judgment of the Circuit Court, and enter judgment for the defendant town, as the Circuit Court ought to have done.

*Reversed.*