Allsman *et al.* v. Oklahoma City.

No. 56.    Opinion Filed May 13, 1908.

(95 Pac. 468.)

1.    INTOXICATING LIQUORS—License Fee—Recovery Back—State Prohibition.   In an action to recover a sum certain, the unearned portion of a license fee paid by licensees to licensor while a city of the first class, organized and existing under the laws of the territory of Oklahoma, for a license duly issued to sell malt, spirituous, and vinous liquors, the petition, which states that by reason of the ratification and adoption of the Constitution of the state, together with the "prohibitory clause" as part thereof by vote of the qualified electors of said proposed state on September 17, 1907, prohibiting the sale of such liquors within said territory upon its admission into the Union, and that said city had since that time, without fault of the licensee, forced said licensees to close their place of business and cease to sell such liquors under their said license under threats of prosecution, sufficiently states a cause of action, and a demurrer thereto was improperly sustained.

2.    MONEY RECEIVED—When Action Lies.   An action will lie to recover a sum certain whenever one has the money of another which he in equity and good conscience has no right to retain.

(Syllabus by the Court.)

*Error from Oklahoma County Court; before Sam Hooker, Judge.*

Action by Frank P. Allsman and others against the city of Oklahoma City.   Judgment for defendant, and plaintiffs bring error.   Reversed and remanded.

On December 4, 1907, Frank P. Allsman and C. F. Reynolds, partners, doing business as Allsman & Reynolds, plaintiffs in error, plaintiffs below, sued the city of Oklahoma City, defendant in error, defendant below, in the county court of Oklahoma county to recover $341.61, the unused portion of a license issued by defendant in error to plaintiffs in error as retail liquor dealers in said city.

The petition, in substance, alleges that defendant in error

is a city of the first class, organized and existing under and by virtue of the laws of the territory of Oklahoma; that on June 29, 1907, plaintiffs in error, as petitioners, applied to the board of county commissioners of Oklahoma county, territory of Oklahoma, for a license to sell malt, spirituous, and vinous liquors at retail at 113 West Grand avenue, on lot 32, block 33, in Oklahoma City, Oklahoma county, for a period of 12 months; that on July 22, 1907, said license was issued according to law upon plaintiffs in error paying into the treasury of the county the sum of $200, which was done, said license to run for 12 months from that date; that in accordance with an ordinance duly passed by the city council of defendant in error, plaintiff in error applied to said city council for license to sell within said city at said place malt, spirituous, and vinous liquors for a period of 12 months from July 22, 1907, until July 22, 1908, which was granted upon petitioners paying the city clerk of said city $500, which was done, and turned into the treasury of defendant in error, and expended in paying the salaries of the mayor, city council, auditor, and other employes of said city of Oklahoma City; that by virtue of the terms of the enabling act (Act June 16, 1906, c. 3335, 34 Stat. 276) the constitutional convention submitted to the qualified electors of the proposed state of Oklahoma a Constitution for said proposed state, together with a separate measure, known as the "prohibitory clause" of said Constitution, which said Constitution and said proposed separate measure were voted on by the qualified electors of said proposed state on September 17, 1907, and by them ratified and adopted as a part of the Constitution of the state of Oklahoma; that said separate measure, as aforesaid, prohibits the sale of malt, spirituous, and vinous liquors upon the admission of said territory into the Union as a state; that since the admission of the state into the Union, to wit, on November 16, 1907, the chief of police of said city of Oklahoma City forced and compelled plaintiffs in error, without fault on their part, to close their said place of business and to cease the sale of malt, spirituous, and vinous liquors under said license under a threat of

prosecution; that by reason thereof the license of plaintiffs in error aforesaid has been canceled and revoked without fault on their part; that by reason of said change of a territorial form of government to a state form of government, and by reason of the adoption of the Constitution aforesaid and said act of defendant in error, city of Oklahoma City, plaintiffs in error have been deprived of their rights under said license, and have been and are now prohibited from selling malt, spirituous, and vinous liquors in said city under and by virtue of said license, and have been deprived of the use of said license from November 16, 1907, until July 22, 1908, and by reason thereof defendant city of Oklahoma City has collected of and from the plaintiffs in error on said license the sum of $341.61, the amount paid to it by plaintiffs in error for the use of the same for that time, the repayment of which has been refused on the part of the city upon demand—and prays judgment against the city for said amount.

On December 30, 1907, the defendant in error, city of Oklahoma City, filed a general demurrer to said petition, which was on January 17, 1908, sustained by the court, to which plaintiffs in error duly excepted and declined to plead further, and, electing to stand upon their petition, judgment was rendered in favor of defendant, from which plaintiffs appealed to this court, and the same is now before us for review.

*E. G. McAdams, Giddings, Giddings, & Lindsay,* and *Harris & Wilson,* for plaintiffs in error.

*E. E. Reardon, Co. Atty., James S. Twyford,* and *John H. Hayson, Asst. Co. Attys.,* and *W. R. Taylor, City Atty.,* for defendant in error.

TURNER, J. (after stating the facts as above.) The only question for us to decide is whether the licensee may recover back the unearned portion of the license fee where the license fails without fault of the licensee. It would seem that this should be answered in the affirmative on the plainest principles of natural justice. It is contended, however, that this is an action in the

nature of assumpsit, and as such it can only be based upon some contractual liability arising out of property rights, and that, as such licenses are not contracts (*Prohibitory Amend. Cases,* 24 Kan. 700), nor property in any legal or constitutional sense (*Board v. Barrie,* 34 N. Y. 659), this action will not lie. It is true that at common law assumpsit would not lie except upon a parol or simple contract, but we think the modern rule well settled and more in keeping with the spirit of the law is that the action will lie whenever one has the money of another which he in equity and good conscience has no right to retain. *Lawson's Ex'r v. Lawson,* 16 Grat. (Va.) 230, 80 Am. Dec. 702; *S. F. Gas Co. v. San Francisco,* 9 Cal. 453; *Lime Rock Bank v. Plimpton,* 17 Pick. (Mass.) 159, 28 Am. Dec. 286.

In looking over the wide field of adjudication, we find that in no state does the question herein propounded seem to be settled, except in Nebraska, from which the territory of Oklahoma adopted its statutes regulating the license and sale of intoxicating liquors, and, while we are not bound to follow the decisions of the Supreme Court of that state on this subject, yet, "so far as these decisions are consistent with logic and reason, we feel constrained to follow them." *Swan v. Wilderson et al.,* 10 Okla. 547, 62 Pac. 422.

Turning to those decisions, we find that in *Lydick v. Korner,* 15 Neb. 500, 20 N. W. 26, plaintiff had obtained a license from the proper authorities to sell intoxicating liquors during the fiscal year. Remonstrance was filed and overruled, and, no appeal having been taken, the license issued. At the next term of the district court the transcript was filed therein, the remonstrance sustained, and the license canceled. The Sureme Court reversed the judgment of the district court. Upon the cancellation of the license, plaintiff closed his saloon and brought this action to recover the money paid for the license. The court below dismissed the suit. The Supreme Court said:

"He was entitled either to a license or a return of the money

paid for the same, at least *pro tanto* for the unexpired time upon the cancellation of the license, and the court should have directed its repayment. This is but justice." (Citing *State v. Cornwell,* 12 Neb. 470, 11 N. W. 729.)

In *State of Nebraska v. Cornwell, supra,* relator paid the necessary fee for a license to sell intoxicating liquors, and one was issued. Through certain omissions of the corporate authorities required by law the license was void. "Subsequently the required steps were taken, whereupon relator applied for a license on the credit of his former payment and for the unexpired term for which he paid, so far as it would go," the money not being returned to him, and the court held that he was entitled to it.

In *City of Auburn v. Mayer,* 58 Neb. 161, 78 N. W. 462, a license was issued, and an appeal then taken, and the license was suspended. The appeal was finally determined in favor of the applicant, and the license re-issued. It was held by the court that the licensee was entitled to repayment of such portion of the license fee taken as the time when his enjoyment of the license was suspended bore to the license year. In passing the court said:

"It has been too long and too well settled by decisions of this court to permit of any change, except through legislation, that the license fee is not paid for the privilege of asking for a license, but for the license itself, and that, where the license fails through no fault of the applicant, he is entitled to have refunded the unearned portion." (Citing *State v. Cornwell,* 12 Neb 470, 11 N. W. 729; *Lydick v. Korner,* 15 Neb. 500, 20 N. W. 26; *State v. Weber,* 20 Neb. 467, 30 N. W. 531; *Chamberlain v. City of Tecumseh,* 43 Neb. 221, 61 N. W. 632; *School District v. Thompson,* 51 Neb. 857, 71 N. W. 728.)

In *School District No. 34 of Thayer County v. Thompson,* 51 Neb. 857, 71 N W. 728, the court in its syllabus, in part, says:

"Where a liquor license has been issued and is thereafter canceled without fault of the licensee, he is entitled to a repayment *pro tanto* of the sum paid for the unexpired time."

In *Pearson v. City of Seattle,* 14 Wash. 438, 44 Pac. 884, the city, after issuing the license authorizing the licensee to conduct

public amusements in connection with his saloon, passed an ordinance prohibiting such amusement, and the court held that the licensee was entitled to recover the unearned portion of the money paid for his license. In passing the court said:

"Conceding that the city, in the exercise of its police power, had a right to revoke respondent's license, as it did virtually revoke it by Ordinance No. 3,152, yet it does not follow that it has a right to retain the money received for a license for a time during which such license was rendered valueless by its own act. The respondent paid his money for a consideration which he has, in part, failed to receive, by reason of the act of the city. On the other hand, the city has received money for the granting of a privilege which it has repudiated and annulled. It is therefore in justice and equity bound to repay it." (Citing *Lydick v. Korner,* 15 Neb. 500, 20 N. W. 26; *State v. Cornwell,* 12 Neb. 470, 11 N. W. 729. Also, *Martel v. City of East St. Louis,* 94 Ill. 67.)

In *Hirn v. State of Ohio,* 1 Ohio St. 15, the court says:

"The court is not disposed to question the power of the Legislature in a matter of this kind, connected as it is with the public policy and domestic regulations of the state. Upon the ground of protecting the health, morals, and good order of community, we are not prepared to say that the Legislature does not possess the power to revoke such license. But where there has been no forfeiture of the license by abuse or violation of its terms, common honesty would require that the money obtained for it should be refunded in case of its revocation. The act of March 12, 1851, did not, by its terms, take effect until the 1st of May of that year, up to which period licenses could have been granted under the law of 1831. It is not reasonable to presume that the Legislature would, after authorizing a license and allowing the granting of it till a particular period, and after obtaining thereby the payment of many thousands of dollars into the treasury, revoke the license before the expiration of the term for which it was granted, without reimbursement. At least the court will not presume any such act of bad faith from mere implication."

We are not unmindful of the force of defendant's contention that the license tax, being legal at the time it was paid, and being paid voluntarily by the licensee, cannot be recovered, and we

have carefully noted authorities cited in support thereof, especially *Peyton v. Hot Springs Co.,* 53 Ark. 236, 13 S. W. 764, where the court, in effect, held that where a petition for the prohibition of intoxicating liquors within certain limts, under the "three-mile law," was denied by the county court, and on the same day a license to retail liquors within the limit was granted, and subsequently, upon appeal to the circuit court, the prohibitory petition was sustained, the licensee, who thereupon desisted from the sale of liquors, could not recover from the county so much of the tax as was proportioned to the remainder of his unexpired license. We also note that the court in its opinion does not cite a single authority to sustain it.

Directly in conflict with that opinion is *R. M. Sharp, Appellant, v. City of Carthage, Respondent,* 48 Mo. App. 26, where a similar contention was made. In that case appellant had a county dramshop license expiring November 1, 1887, and a city license expiring October 1, 1887. A city election had been called to be held on September 2, 1887, under the provisions of the local option law, for the purpose of submitting the question to the qualified voters of the city whether or not intoxicating liquors should be sold therein. One day previous to the election appellant made application to the city for a dramshop license for one year, which was issued upon his paying the sum of $800 into the city treasury. A city ordinance provided that no dramshop license should issue for a less or greater period than one year. On November 1st, his county license having expired, he applied to the county court of the county for a county license, which was refused him for the reason that the city had adopted the local option law. Failing to procure the county license, he closed his saloon and demanded of the city the return of $600 of his money, paid September 1st, and upon its refusal sued to recover the same. The lower court held that he was not entitled to recover. The Supreme Court reversed the case, and in passing said:

"Money illegally or erroneously, but voluntarily, paid for license taxes cannot be recovered back. *Grimley v. Santa Clara Co.,*

68 Cal. 575, 9 Pac. 840; *Mays v. Cincinnati,* 1 Ohio St. 268; *Cook v. City of Boston,* 9 Allen (Mass.) 393. And the decisions in this state are to the same effect, although they recognize a moral duress as sufficient to constitute involuntary payment. *Maguire v. Savings Ass'n,* 62 Mo. 344; *Wolfe v. Marshall,* 52 Mo. 167. But that is not the question which governs the decisions in this case. The controlling question here is: Can money be recovered back when the object for which it is paid is frustrated, not by accident nor by the act of the party paying it, but by the act of the party to whom it is paid? * * * The plaintiff did not pay $800 for a piece of worthless paper, but for the privilege of carrying on a dramshop within the city for a period of one year without interference by the city while he complied with the other legal requirements. When the city thereafter immediately voted against the sale of intoxicating liquors within its boundaries, it thereby effectually prohibited the county court from granting a license to plaintiff, and rendered its own license worthless. The case is not distinguishable on principle from one where the city, having power to revoke a license, would on one day issue license for a year, pocket the proceeds, and then revoke it the next day without cause, because the case concedes that the only reasons why the county court failed to issue a license to the plaintiff was that the city by its vote had prohibited it from so doing. The principle governing an action for money had and received is that the possession of money has been obtained which cannot be conscientiously withheld. Such an action is designed for the advancement of justice, and it is applicable where a person receives money which in equity and good conscience he ought to refund. *Supervisors v. Manny,* 56 Ill. 160."

This same contention was made in *Marshall v. Sneidker,* 25 Tex. 460, 78 Am. Dec. 534. There the court said:

"It is contended that the payment of the license tax imposed by the city was voluntarily made by the defendants, and that for that reason they cannot recover back the money so paid. * * * The ordinance of the city council required the defendants to obtain a license before retailing liquor, and imposed a heavy penalty for its violation. The defendants, by refusing to pay, would have placed themselves in the attitude of resisting the public authorities, and would have exposed themselves to the certain harrassment of litigation, and to the great hazard of ruinous

loss, if they should fail in that resistance.   *   *   *   It has often been held that if a party pay money voluntarily, in ignorance of law, but with a knowledge ·of all the facts, he cannot recover it back. *Bilbie v. Lumley et al.,* 2 East, 469. *Contra, Warder v. Tucker,* 7 Mass. 449, 5 Am. Dec. 62. And see *Mowatt v. Wright,* 1 Wend. (N Y.) 355, 19 Am. Dec. 508. This rule cannot obtain, however, where the parties are not upon equal terms in the transaction. 'If one party has the power of saying to the other, "That which you require shall not be done except upon the conditions which I choose to impose," no person can contend that they stand upon anything like an equal footing.' Here defendants were merely passive, and submitted to pay the sum claimed, as they could not otherwise procure the license required by the city ordinance. *Morgan v. Palmer,* 2 Barn. & Cres. 319-321. If, also, the city council exceeded its authority in making this assessment of tax, and demanded and received from the defendants more than the charter permitted, and it was paid under pressure of the summary remedies prescribed for its collection, and of the heavy penalty for retailing without its payment, it was against good conscience to retain it ,and there is an additional reason why the action for it can be maintained. *Brisbane v. Dacres,* 5 Taunt. 90."

Hence we say that this is not a case of money illegally or erroneously, but voluntairly, paid for a license tax, but one in which it has been paid strictly in conformity to law the object of which has failed without fault of either party resulting in a change of governmental policy in which the voters of the city of Oklahoma City participated. It follows that defendant in error has received money belonging to plaintiffs in error to the amount set forth in their petition, which it is not in equity and good conscience entitled to retain, for which this action will lie, and that the trial court erred in sustaining the demurrer thereto.

The cause is reversed and remanded.

All the Justices concur.