[No. 9112. Department Two. November 15, 1910.]

### F. J. Bart, *Plaintiff* v. Pierce County, *Defendant*.[1]

Intoxicating Liquors—License—Recovery of Fee—Liability of County—Incorporation of Town. The unearned portion of a county liquor license can be recovered by the licensee when his license has become inoperative by reason of the incorporation as a town of the territory in which his saloon was conducted, where the same has not passed ·beyond the county's control.

Same — Defenses — County Funds — Actions — Multiplicity of Suits. A county cannot escape repayment of the unearned portion of a liquor license, which has become inoperative, by the fact that the same has been transferred to the county school fund, and transferred to the school districts; since the school fund is a continuing fund under the control of the county, and the rule against a multiplicity of suits forbids separate actions against each school district, as such course is not necessary

Cross-appeals from a judgment of the superior court for Pierce county, Shackleford, J., entered April 26, 1910, in favor of the defendant, upon an agreed statement of facts, in an action to recover the unearned portion of a liquor license fee. Reversed on plaintiff's appeal.

*Burkey, O'Brien & Burkey*, for plaintiff.

*J. L. McMurray* and *F. D. Oakley*, for defendant.

Rudkin, C. J.—On the 28th day of April, 1909, the board of county commissioners of Pierce county granted a license to the plaintiff to sell spirituous, fermented, malt, and other intoxicating liquors, on certain premises in the town of Wilkeson in said county, particularly designated and described on the face of the license, for the term of one year from that date. On the 12th day of July, 1909, the town of Wilkeson became incorporated as a town of the fourth class, under the general laws of the state, and thereafter passed an ordinance providing for the regulation and sale of intoxicating liquors within its corporate limits. On the 1st day of October,

[1]Reported in 111 Pac. 582.

1909, the plaintiff was compelled to take out a town license pursuant to this ordinance, and thereafter presented his claim to the board of county commissioners for the unearned portion of the county license fee. The claim was rejected by the board, and this action was thereupon instituted within the time limited by law. The court below held that the plaintiff was entitled to recover the 55 per cent of the unearned license fee which was paid into the general fund of the county, but denied a recovery of the residue, and from this judgment, both parties have appealed, and will be designated as in the court below.

It is conceded that the county license became inoperative upon the incorporation of the town of Wilkeson, and we will assume that such was the case, without expressing any opinion upon that question. The question for decision on this appeal is thus stated in the county's brief: "Can a licensee recover from a county, for the unexpired portion of a year, the unearned proportion of a license fee paid said county for a liquor license, where said license was rendered inoperative by reason of the incorporation as a town of the territory in which the saloon was conducted, and said licensee was compelled by the authority of the newly incorporated town to procure a license from it to conduct said saloon business?" This question must be answered in the affirmative. It was so held by this court in *Pearson v. Seattle*, 14 Wash. 438, 44 Pac. 884, and we are satisfied with the rule there announced. True, in that case the license fee was paid to the city, and the license was rendered inoperative by the act of the city, while in this case the license was rendered inoperative by operation of law, rather than by any act of the county, but we do not deem this distinction a material one. In *Allsman v. Oklahoma City*, 21 Okl. 142, 95 Pac. 468, 16 L. R. A. (N. S.) 511, the city license was rendered inoperative by a provision of the constitution of the new state, but the court held that the right of recovery should be sustained, "On the plainest principles of natural justice." See, also, *State ex rel.*

*Johnson v. Cornwell,* 12 Neb. 470, 11 N. W. 729; *Lydick v. Korner,* 15 Neb. 500, 20 N. W. 26; *State v. Weber,* 20 Neb. 467, 30 N. W. 531; *Chamberlain v. Tecumseh,* 43 Neb. 221, 61 N. W. 632; *School District etc. v. Thompson,* 51 Neb. 857, 71 N. W. 728; *Hirn v. State,* 1 Ohio St. 15; *Sharp v. Carthage,* 48 Mo. App. 26.

It is said that the rule thus announced is not supported by the weight of authority in other jurisdictions, but it at least finds support in the great principles of natural justice and common honesty by which the conduct of the state and its instrumentalities, as well as the conduct of the individual, should be guided. We are therefore of opinion that the appeal of the county is without merit.

Nor do we think the position of the court below, that the plaintiff is not entitled to recover the 35 per cent of the unearned license fee which was paid into the county school fund, is tenable. The fee was lawfully paid into the county treasury in the first instance, and in so far as it has passed beyond the control of the county authorities in accordance with law, the county is not liable for its return. This is undoubtedly true of the ten per cent of the fee paid over to the state treasurer, and the same is equally true of the portion paid into the county school fund, if, as a matter of law, that portion is now beyond the control of the county authorities. But such, in our opinion, is not the case. All moneys paid into the county treasury are apportioned to different funds as a matter of policy or convenience, such as the county school fund, the road fund, the bridge fund, the salary fund, the general fund, etc., but all these funds are under the control and subject to the dominion of the county, and so long as they remain there it is not without the power of the county to dispose of them as law and justice may require, nor is it beyond the power of the courts to compel such disposition in a proper case. If any part of the unearned portion of this license fee has passed beyond the control of the county authorities and into the custody and control of the several school districts of the county,

an action would lie against each district to recover the sum apportioned to it, for the like reason that an action will lie against the county itself. For where a municipality has obtained the money or property of another without authority of law, it is its duty to refund it; not by reason of any contract or obligation it has entered into, but from the natural obligation to do justice, which binds all persons whether natural or artificial. *Argenti v. San Francisco*, 16 Cal. 255; *Loring v. St. Louis*, 10 Mo. App. 414.

But a court will not require a plaintiff to resort to such a multiplicity of suits, nor will it tolerate such a practice, unless compelled to do so from the necessities of the case, and we do not deem such a course at all necessary here. The county school fund is a continuing one, and rights and obligations against it may properly be enforced, and should be enforced, against its lawful custodian. If a void tax is paid under protest and afterwards apportioned to the different county funds, it cannot be that the taxpayer must resort to each individual fund for restitution, nor that he is entirely without remedy. Such a case does not differ materially from the one now under consideration. Cooley, Taxation (2d ed.), p. 807; *Byles v. Golden*, 52 Mich. 612, 18 N. W. 383.

The judgment is therefore reversed, with directions to enter judgment in favor of the plaintiff for 90 per cent of the unearned license fee, with legal interest from the date of the presentation of his claim to the board of county commissioners.

DUNBAR, MORRIS, CROW, and CHADWICK, JJ., concur.