(May 2, 1913.)

P. E. ROBERTS et al., Respondents, v. BOISE CITY, Appellant.

[132 Pac. 306.]

LIQUOR LICENSE—REVOCATION OF LIQUOR LICENSE—RETURN OF UN-EARNED LICENSE TAX.

1. Under the provisions of subd. 8 of sec. 42 of the charter of Boise City, as amended in 1909 (1909 Sess. Laws, p. 113), the city council have authority "to license, tax, regulate and restrain

bar-keepers, saloon keepers, dealers in and manufacturers of spirituous, vinous or malt liquors . . . . and to require bonds to be given by the proprietors of the business mentioned in this subdivision, with sufficient sureties, conditioned not to keep, allow or permit a disorderly house, and to cancel and revoke any such license, in their discretion," and under this provision of the charter the city council may summarily revoke a license previously granted at their pleasure and without giving any reason therefor.

2.   There is no statute in Idaho and no provision in the charter of Boise City authorizing or requiring a return of the unearned portion of a license tax after a revocation or cancelation of the license or after the licensee ceases to exercise the privilege granted thereunder.

3.   It is recognized as a general rule of law that a liquor license tax voluntarily paid cannot be recovered back unless there is a statute which expressly authorizes such recovery.

4.   It is only where a license granted by a municipality becomes inoperative by the act of the municipality itself or by operation of law that the licensee may recover the unearned portion of his license tax.

5.   To allow one who has been the holder of a liquor license and whose license has been revoked to recover the unearned portion of such license would tend to disorganize the revenue system provided for by the city or county, and would leave the municipality at a disadvantage in meeting the expenses of the various departments of government, and would tend to create deficiencies and leave the authorities in a state of uncertainty as to the amount of revenue they would receive from license taxes and the amount necessary to be raised by tax levy.

6.   One who applies for a liquor license and pays the license tax thereby applies for the exercise of a privilege or grant, rather than the exercise of a natural right, and he does so with full knowledge of the condition of the law on the subject and of the power of the authorities granting such license to subsequently revoke the same, and also of the absence of any law authorizing a return of any unearned portion of such tax.

APPEAL from the District Court of the Third Judicial District of Ada County.   Hon. Carl A. Davis, Judge.

Action to recover the unearned portion of a liquor license tax.   Judgment for plaintiffs.   Defendant appealed.   *Reversed.*

Charles F. Reddoch, for Appellant

The authority granting a liquor license may revoke it if, in the judgment of that body, the holder of the license is an unfit person to conduct a liquor business. (*Wallace v. Mayor*, 27 Nev. 71, 103 Am. St. 747, 73 Pac. 528, 63 L. R. A. 337.)

A license to sell liquor is neither a contract nor property right, but a mere temporary permit to do that which would otherwise be unlawful, and the authority which grants it always retains the power to revoke it. (*Sprayberry v. Atlanta*, 87 Ga. 120, 13 S. E. 197; *McConkie v. Remley*, 119 Iowa, 512, 93 N. W. 505; *Newman v. Lake*, 70 Kan. 848, 79 Pac. 675; *Fell v. State*, 42 Md. 71, 20 Am. Rep. 83; *Martin v. State*, 23 Neb. 371, 36 N. W. 554; *State v. Horton*, 21 Or. 83, 27 Pac. 165; *Davis v. Commonwealth*, 75 Va. 944; *Cassidy v. Macon*, 133 Ga. 689, 66 S. E. 941.)

The charter provision, "and to *cancel* and *revoke* any such license, in their discretion," leaves the matter entirely in the judgment of the city authorities as to when a license should be revoked. (*Darby v. Pence*, 17 Ida. 697, 107 Pac. 484, 27 L. R. A., N. S., 1194; *People v. Flushing Board Excise Commrs.*, 24 Hun (N. Y.), 195; *In re Carlson*, 127 Pa. 330, 18 Atl. 8; *Rodden v. Providence License Commrs.* (R. I.), 21 Atl. 1020.)

The complaint shows upon its face voluntary payment of the license money, and the rule is, that "A license tax voluntarily paid cannot be recovered back, unless there is a statute, which expressly authorizes such recovery." (3 McQuillin, Municipal Corporations, sec. 1009; 1 Woolen & Thornton on Intoxicating Liquors, sec. 497, and notes; *Melton v. Moultrie*, 114 Ga. 462, 40 S. E. 302; *McGinnis v. Medway*, 176 Mass. 67, 57 N. E. 210; *Parrent v. Little*, 72 N. H. 566, 58 Atl. 510; *Toman v. Westfield*, 70 N. J. L. 610, 57 Atl. 125; *Matter of Lyman*, 28 Misc. (N. Y.) 278, 59 N. Y. Supp. 828; *People v. Schafran*, 168 Mich. 324, 134 N. W. 29; *City of Louisville v. Cain*, 134 Ky. 76, 119 S. W. 763; Joyce on Intoxicating Liquors, sec. 330.)

Charles M. Kahn and Ed. R. Coulter, for Respondents.

"Where a liquor license, granted by the municipality, becomes inoperative by the act of the municipality or by operation of law, the licensee is entitled to recover the unearned portion of his license." (McQuillin on Municipal Corporations, sec. 1009.)

A refund should be allowed where the licensee was deprived of his license. (*City of Auburn v. Mayor,* 58 Neb. 161, 78 N. W. 462; *Lydick v. Korner,* 15 Neb. 500, 20 N. W. 26; *State v. Cornwell,* 12 Neb. 470, 11 N. W. 729; *State v. Weber,* 20 Neb. 467, 30 N. W. 531; *Chamberlain v. City of Tecumseh,* 43 Neb. 221, 61 N. W. 632; *School District v. Thompson,* 51 Neb. 857, 71 N. W. 728; *Sharp v. City of Carthage,* 48 Mo. App. 26; *Pearson v. City of Seattle,* 14 Wash. 438, 44 Pac. 884; *Bart v. Pierce County,* 60 Wash. 507, 111 Pac. 582, 31 L. R. A., N. S., 1151; *Marshall v. Snediker,* 25 Tex. 460, 78 Am. Dec. 534; *Martel v. East St. Louis,* 94 Ill. 67; *Allsman v. Oklahoma City,* 21 Okl. 142, 95 Pac. 468, 17 Ann. Cas. 184, 16 L. R. A., N. S., 511.)

AILSHIE, C. J.—In the latter part of March, 1911, respondents applied to the council of Boise City for a retail liquor license for a period of six months, commencing April 1st, and accompanied their application with the required license tax of $600. The license was thereupon granted, and thereafter on the 8th of May, 1911, the council summarily revoked the license theretofore issued, entering of record as their reason therefor that the parties "had been shown to be unfit persons in the judgment of the council to conduct a saloon." This action was subsequently instituted for the recovery of the sum of $473.35, together with interest thereon from the date of the cancelation of the license, as representing the unearned portion of the license money. The city filed a demurrer to the complaint, alleging that the complaint failed to state facts sufficient to constitute a cause of action. The demurrer was overruled, the city refused to plead further, and judgment was thereupon entered against the city and in favor of respondents.

The first question presented is that of the power of the city council to revoke the license issued to respondents. Subd. 8 of sec. 42 of the city charter, as amended in 1909 (1909 Sess. Laws, p. 113), provides that the city council shall have the power, "To license, tax, regulate and restrain barkeepers, saloon-keepers, dealers in and manufacturers of spirituous, vinous or malt liquors, and the places where the same are kept for sale, or in any manner disposed of . . . . and to require bonds to be given by the proprietors of the business mentioned in this subdivision, with sufficient sureties, conditioned not to keep, allow or permit a disorderly house, and to cancel and revoke any such license, in their discretion. . . . . "

It appears that at the time of these transactions there was in force in Boise City an ordinance known as Ordinance No. 871, and that sec. 17 of that ordinance provided that if any person should be convicted a second time for violation of any of the provisions of any of the ordinances of Boise City relating to the sale and disposal of intoxicating liquors, such person should be punished for such second violation by both such fine and imprisonment prescribed by the ordinance violated, and that in addition thereto the council might annul and declare forfeited the license issued to such person.

It is argued by respondents that the city, having passed this ordinance with reference to the revocation of a liquor license by a second conviction, could not while such ordinance was in force and effect, summarily and arbitrarily revoke a liquor license, but that, on the contrary, the council had set a limit to its discretion by the provisions of this ordinance. This contention is not sound. This ordinance was not self-operative. It did not direct any officer to forthwith cancel the license, but it *still left it to the city council to act. Besides, a city council could not thus limit a discretion vested in it by the legislature.* There can be no reasonable doubt about the authority of the city council, under the foregoing charter provision, to summarily and arbitrarily cancel a liquor license which it had previously granted. The authority conferred upon the council by the legislature under subd. 8, sec.

42, of the charter is a discretionary power, and it is given to the council as one of the police powers of the municipality. (See *Perkins v. Loux,* 14 Ida. 607, 95 Pac. 694; *Darby v. Pence,* 17 Ida. 697, 107 Pac. 484, 27 L. R. A., N. S., 1194; *Sprayberry v. Atlanta,* 87 Ga. 120, 13 S. E. 197; *Newman v. Lake,* 70 Kan. 848, 79 Pac. 675.)

The next and only remaining question to be considered is the right of the respondents to recover the unearned portion of the license money paid. In the first place, it is conceded that there is no statute in this state authorizing a recovery of money paid under such circumstances or the recovery of the unearned portion of a liquor license tax once paid. The general rule recognized by the authorities is that "A license tax voluntarily paid cannot be recovered back unless there is a statute which expressly authorizes such recovery." (3 McQuillin, Munic. Corp., sec. 1009; 1 Woolen & Thornton on Intox. Liquors, sec. 497; Joyce, Intox. Liquors, sec. 330.) The foregoing rule, however, is subject to an exception which McQuillin mentions in the footnote to the above cited section as follows: "Where a liquor license granted by the municipality becomes inoperative by the act of the municipality or operation of law, the licensee may recover the unearned portion of his license." This exception seems to be supported by the following authorities: *Pearson v. City of Seattle,* 14 Wash. 438, 44 Pac. 884; *Bart v. Pierce County,* 60 Wash. 507, 111 Pac. 582, 31 L. R. A., N. S., 1151; *Hirn v. Ohio,* 1 Ohio St. 15; *City of Marshall v. Snediker,* 25 Tex. 460, 78 Am. Dec. 534; *Martel v. East St. Louis,* 94 Ill. 67; *Allsman v. Oklahoma City,* 21 Okl. 142, 95 Pac. 468, 17 Ann. Cas. 184, 16 L. R. A., N. S., 511.

While the city council in this case revoked the license previously granted to respondents, it cannot be said from the record here presented that their cancellation of the license was the result of any fault of the city or of the city council. On the contrary, the inference might properly be drawn from the record that the respondents had been running a disreputable place and that their conduct had satisfied the council that they were not fit persons to conduct the saloon

business. This is the record made by the council at the time of revoking the license and the reason given by them for the revocation. There is no statute in this state authorizing the return or payment to one who has procured a saloon license of any unearned portion of such license, whether revoked by the authorities granting it or by a judgment of a court. It would seem, however, at first blush that the city should not be allowed to cancel a license and retain the unearned portion of the license money. The people in their collective capacity as a municipality ought to observe the same rules of honesty and fair dealing that they would demand of each other under like circumstances in their individual dealings. Upon this principle, which seems axiomatic, one might readily conclude that the city or county should be compelled to repay unearned license money whenever a license is revoked or canceled. When, however, we look at the matter from another viewpoint, we see the matter quite differently. It often happens that either an individual member of society must suffer an inconvenience or else the whole community must suffer, in which case the inconvenience must fall rather upon the individual than upon the whole community. The city or county must act through agencies and transact the whole public business in that way. The city authorities must make their estimates as to the amount of revenue required for running the various departments of the city government for a year. In making their tax levy, they necessarily take into consideration the amount of revenue to be raised from the issuance of licenses and all other sources of revenue and make the tax levy accordingly. This revenue when collected is apportioned into various funds for the payment of the expenses of maintaining the different departments of city government, and in the cases of county licenses a part of such fund goes to the maintenance of the public schools. If a rebate or return on an unearned license tax may be paid to one man, it must be paid to all under like circumstances. If this rule were to be established, and it should so happen that a considerable number of liquor licenses would be revoked, the repayment of the unearned license tax might seriously cripple the administration of some

of the departments of the city or county government. Again, if this thing can be done in the case of Boise City, it can be done in the case of a revocation of a county license. If this rule be established, one might procure a liquor license for some particular place or locality during a few months of a particularly prosperous season of the year, and then so conduct his business as to have his license revoked and secure the return of his money for all the rest of the period covered by his license. This, no doubt, would be the result in many places. A saloon would be conducted for a few months and then the proprietor would manage to get his license revoked for the balance of the period.

In view of these difficulties and dangers, and the still more essential fact that the legislature of this state has never seen fit to enact a statute authorizing such a return of unearned license money, we feel that the court ought not at this time, and in the face of these conditions, to depart from the well-established rules of law governing this question, and embark upon a policy of compelling cities, towns and counties to repay unearned license money every time a license is revoked, unless it be clearly established that the party who procured the license was in no way responsible for the revocation and that his conduct in running the business had in no way caused the revocation. In other words, no recovery should be allowed unless the evidence clearly shows that the fault lay wholly with the city, town or county or authorities representing them instead of with the party holding the license. When a person applies for a liquor license, he is seeking a privilege rather than a natural right, and he does so with full notice of the conditions of the statute governing that business and of the power of the authorities to cancel his license at any time, and that there is no authority for a return of any of his license money in case of a revocation of the license. So it is one of the risks and chances of the business which he assumes when he procures his license.

We conclude, therefore, that the judgment of the trial court should be reversed, and it is so ordered. The cause is remanded, with direction to the trial court to sustain the de-

murrer to the complaint.    Costs awarded in favor of appellant.

Sullivan and Stewart, JJ., concur.