CHARLES BLUM COMPANY, A CORPORATION ORGANIZED AND
EXISTING UNDER THE LAWS OF FLORIDA, *Plaintiff in Er-*
*ror, v.* TOWN OF HASTINGS, A MUNICIPAL CORPORATION,
*Defendant in Error.*

### Opinion filed June 17, 1918.

1. A general right exists in the common council or other
   proper boards of incorporated cities or towns to refund to
   individuals any sums paid by them as corporate taxes which
   are found to have been wrongfully exacted or for any
   reason, inequitable.

2. Where a license to do business granted by a municipality,
   becomes inoperative by operation of law, the licensee may
   recover the unused portion of his license tax from the
   municipality.

3. Under the implied powers granted to municipalities, they
   have power to and it is their duty to return money received
   for a privilege which the person who paid it is prevented
   from enjoying through the operation of law through no
   fault of his.

Writ of Error to Circuit Court for St. Johns County,

George Couper Gibbs, Judge.

Judgment reversed.

*Odom, Crawford* and *Butler,* for Plaintiff in Error;

*Frank E. Jennings* for Defendant in Error.

BROWNE, C. J.—The seventh count of the declaration
in this case alleges in substance that the Charles Blum

Company paid the City of Hastings the sum of $2,000.00, for the privilege of selling wines, beers and liquors for the term of one year, from October 1st, 1913; that on the 2nd day of April, 1914, a local option election was held in St. Johns County and the precinct in which the town of Hastings is situated voted against the sale of liquor; plaintiff's license thereby became revoked through no act or fault of his, and he was deprived of the use thereof from the 2nd day of April to the 1st day of October, 1914. He sues for the return of the amount due for the unexpired and unused portion of his license.

A demurrer to this count was sustained, and the Court on plaintiff's motion permitted him, to dismiss without prejudice, all the counts of the declaration except the seventh, and upon plaintiff refusing to amend or to plead further, final judgment was rendered against him in favor of the defendant. The plaintiff took writ of error to this Court.

The question presented is the right or duty of the Town of Hastings to refund to the plaintiff the amount paid for the privilege of carrying on a business of retail liquor dealer therein from the 2nd day of April to the 1st day of October, 1914.

The defendant in error invokes the doctrine that a municipal corporation has only such powers as are delegated to it by the Legislature and such other additional powers as are fairly implied. There can be no dispute about this rule, and the difference arises as to what powers or duties may be fairly implied from the powers delegated. It can hardly be controverted that among the duties and powers of a City, is that of paying its just obligations; in this instance, to return money received for granting permission for a person to do some-

thing—right at the time—that subsequently became beyond its power to grant or permit.

The rule is thus stated in 2 Cooley on Taxation, (3rd ed.), 1396, 1397. "A general right exists in the State to refund any tax collected for its purposes, and a corresponding right probably exists in the common council, or other proper boards, of cities, villages, towns, etc., to refund to individuals any sums paid by them as corporate taxes which are found to have been wrongfully exacted, or are believed to be, for any reason, inequitable."

What is said by Mr. Cooley with regard to a refund of taxes applies with greater force to an amount paid for a license, as is pointed out by the Kentucky Court of Appeals, Scott v. Board of Trustees of Town of New Castle, 132 Ky. 616, 116 S. W. Rep. 788, 21 L. R. A. (N. S.) 112, "We do not agree with counsel for appellees that a license such as appellant paid is a mere tax, which, when voluntarily paid, cannot be recovered. It is true that a tax, when voluntarily paid, cannot be recovered, though illegally collected. Louisville & N. R. Co. v. Commonwealth, 89 Ky. 531, 12 S. W. Rep. 1064. But this rule is based upon considerations of public policy, and because the law provides ample means of correcting an illegal assessment before the process of collecting the tax begins; but a license such as appellant paid is, on a different footing. As said in Commonwealth v. Central Hotel Co., 121 Ky. 846, 90 S. W. Rep. 565, 12 Ann. Cas. 172, 'A license to sell liquor is for the purpose of regulating the traffic, and incidentally to raise revenue.' 'Taxes are levied and collected regardless of the will or consent of the taxpayer, and for the purpose of raising a revenue * * *. The popular understanding of the word "license" undoubtedly is a permission to do something

which, without the license, would not be allowable. The object of the license is to confer a right that does not exist without the license.' In obtaining the license of appellees, appellant excepted, and appellees intended, it to confer the privilege to appellant to sell liquors in New Castle for the period of a year. In point of fact he exercised under it the privilege for 107 days, for which appellees received, and are entitled to retain $146.60."

Authorities are cited on both sides, some of which conflict, and others are not applicable to the conditions in the instant case. While it is not necessary to discuss these cases extensively, a brief reference to some of them may be enlightening. In Chamberlain v. City of Tecumseh, 43 Neb. 221, 61 N. W. Rep. 632, the Court laid down this rule, "It is the settled law of this State, where a liquor license has been issued by a City Council, and on appeal such license is cancelled, that the licensee is entitled to a repayment *pro tanto* of the sum paid for the same for the unexpired time. Lydick v. Korner, 15 Neb. 500, and State v. Weber, 20 Neb. 467, 30 N. W. Rep. 531, followed."

An expression by the Court in this case that "While each member of the Court as now constituted entertains some doubt as to the soundness of the doctrine laid down in these cases, we do not now feel justified in disturbing. a rule which has been so long recognized and followed by the Courts," is much relied on by the Defendant in Error. At best this is but the expression of a doubt that was not a sufficient strength to justify the Court in disturbing the rule, and it cannot have any weight with us.

The case of Scott v. Board of Trustees of Town of New Castle, *supra,* arose from a different state of facts, but the same question was involved as in the instant case;

the duty of a City to refund to a person the unused por-
tion of a license to sell liquor which he was prevented
from using by reason of the result of a local option elec-
tion.   In that case the Court said:  "We are unable to
see upon what principle of good morals or law appellees
can justify their retention of the amount in controversy,
or legally compel appellant to lose it.   In the case of
Bruner v. Clay City, 100 Ky. 567, 38 S. W. Rep. 1062,
it is held that, where one was required to pay more for
a liquor license than was authorized by the City charter,
the payment was not a voluntary one, and he might re-
cover from the City the amount paid in excess of the
charter requirement.   In principle the case *supra*, does
not differ from the case at bar.   In each case the amount
paid to the City for a license was more than it was en-
titled to receive.   In the one case the amount paid was
in excess of what the charter allowed; in the other, the
payment was not above the amount fixed by law, but it
was in excess of what the City was entitled to retain,
because the privilege of selling liquors, which the license
conferred failed by as much as the alleged excess to
cover the period for which it was issued."

In the case of Roberts v. Boise City, 23 Idaho 716,
132 Pac. Rep. 306, the Court said:  "The people in their
collective capacity as a municipality ought to observe
the same rules of honesty and fair dealing that they would
demand of each other under like circumstances in their
individual dealings."   In that case, the license of the
person who sought to recover for the unused portion,
had been revoked because he was shown to be an unfit
person to conduct a saloon.   This the council had author-
ity to do, and as he lost his right to conduct a saloon
through his own wrong doing, the Court held he was
not entitled to recover.   It, however, laid down this rule,

"It is only where a license granted by the municipality becomes inoperative by the act of the municipality itself or by operation of law that the licensee may recover the unearned portion of his license tax."

In the instant case the Plaintiff in Error was deprived of his right to carry on his business in Hastings "by operation of law." While it is not governing, still the fact that the people of Hastings participated in the election at which the sale of liquors was prohibited, is of much persuasive force.

In the case of Bart v. Pierce County, 60 Wash. 507, 111 Pac. Rep. 582, 31 L. R. A. (N. S.) 1151, the Court said: "It is said that the rule thus announced is not supported by the weight of authority in other jurisdictions, but it at least finds support in the great principles of natural justice and common honesty, by which the conduct of the State and its instrumentalities as well as the conduct of the individual should be guided."

In Sharp v. City of Carthage, 48 Mo. App. 26, the Court said: "The plaintiff did not pay $800.00, for a piece of worthless paper, but for the privilege of carrying on a dramshop within the City for a period of one year without interference by the City while he complied with other legal requirements. When the City immediately thereafter voted against the sale of intoxicating liquors within its boundaries, it thereby effectually prohibited the County Court from granting a license to plaintiff, and rendered its own license worthless. The case is not distinguishable on principle from one, where the City, having power to revoke a license, would on one day issue license for a year, pocket the proceeds, and then revoke it the next day without cause, because the case concedes that the only reason, why the County Court failed to issue a license to the plaintiff, was that the City by its

vote had prohibited it from so doing. The principle governing an action for money had and received is that the possession of money has been obtained which cannot be conscientiously withheld. Such an action is designed for the advancement of justice, and it is applicable where a person receives money which in equity and good conscience he ought to refund. Supervisors v. Manny, 56 Ill. 160. This language is particularly applicable to the present proceeding."

For other cases in support of our holding that it is the duty of a City or County to refund for the unused portion of a liquor license where the licensee has been prevented from using it through no fault of his own, but through operation of law. See Allsman v. Oklahoma City, 21 Okl. 142, 95 Pac. Rep. 468; Nurnberger v. Town of Barnwell, 42 S. C. 158, 20 S. E. Rep. 14; Zeglin v. Board of Com'rs. of Carver County, 72 Minn. 17, 74 N. W. Rep. 901; Bruner v. Clay City, 100 Ky. 567, 38 S. W. Rep. 1062; Supervisor v. Manny 56 Ill. 160.

We concede that there is some conflict in the authorities, but in those cited by Defendant in Error the conflict except in the Georgia cases is more seeming than real. Thus Massachusettts has a Statute providing for a refund of a license fee under certain circumstances, and in the case cited by Defendant in Error it was held that the license did not come within the provisions of the Statute. Another reason why the Massachusetts case is not in point, is that cities in that State have no authority to grant liquor licenses. "Although the question whether licenses shall be granted in any City or Town is determined by the vote of the inhabitants thereof, still the licensing board, whether a special commission, or the Mayor and Aldermen or the Selectmen, do not act as the agents of the City or Town, but as public offi-

cers specially designated in that behalf, and, in the ab-sence of any Statute to the contrary, the City or Town is not answerable for their acts as such officers. The license is not granted by the City or Town, but by the State acting through its duly appointed officers." Mc-Ginnis v. Inhabitants of Medway, 176 Mass. 67, 57 N. E. Rep. 210.

The case of Town of Phoebus v. Manhattan Social Club, 105 Va. 144, 52 S. E. Rep. 839, was one to test the valid-ity of a Statute requiring social clubs to pay a license. At the time the license fee was paid notation was made on the stub of the tax book that payment was made under protest. The Court held that this did not show that the payment was not voluntarily made. The Court, how-ever, held contrary to the contention of the Defendant in Error in the instant case, that it was a tax. The ques-tion before us—the refund of a license fee when through no fault of the holder the City is unable to continue the privilege it gave him and which he paid for—was not involved in the Virginia case.

It is not necessary to continue this discussion to all the cases, as in most of them different Statutes and dif-ferent facts were under consideration. We will content ourselves with the summing up found in 15 Ruling Case Law, Sec. 76: "A considerable number of the decisions favor recovery where, by the adoption of general prohibi-tion or otherwise, the license is annualled or revoked without the licensee's fault; but the rule appears to be otherwise where the license turns out to have been im-properly issued because the formalities and requirements prescribed by law were not observed."

It is not disputed that the Defendant in Error re-ceived $2,000.00 from the Plaintiff in Error, for which it agreed to permit him to carry on the business of liquor

dealer for a year; that through no fault of his own, he was able to engage in such business about six months only; that the Plaintiff in Error has paid about one thousand dollars from which he received no benefit or return, and the City got hold of a thousand dollars for which it gave nothing. If this money is not refunded, the Plaintiff in Error loses a thousand dollars; and if it be refunded the City loses nothing, for it only gives back to him to whom it belongs what he deposited with the City for a privilege which the City is now unable to grant.

Specious reasoning which justifies an individual or a corporation, municipal or private, in keeping money received for a privilege that through no fault of either party the recipient is unable to grant, is of slight weight. It is no answer to this to say that the licensee knew that the people might at any time place it beyond the power of the City to give him the privilege that he had paid for. The City had the same knowledge, and it can be as well said that it took the money knowing it might have to return for the unused portion of the license if through operation of law it could not continue the privilege it had agreed to grant to the licensee.

The Defendant in Error concludes his brief with a statement of which this a part, and this seems to be the theory upon which it predicates its defense: "It took that chance. Having taken the chance, it cannot we submit be heard to urge an implied obligation for relief against this defendant."

It is noticeable that the Courts that sustain the contention of Defendant in Error adopt the same reasoning. We quote from some of the decisions. It is "one of the risks and chances he assumes when he procures his li-

cense." Roberts v. Boise City, 23 Idaho 716, 132 Pac. Rep. 306, 45 L. R. A. (N. S.) 593.

"He takes his chances about 'the revocation.'" McGinnis v. Inhabitants of Medway, 176 Mass. 67, 57 N. E. Rep. 210.

This is the language of the race-track and the card-table, and is in marked contrast to that used by the Courts that hold it to be the duty of the City to refund for the unused portion of a liquor license when through no fault of either party, both are precluded from doing that for which one paid and the other received the money.

Says the New York Court, "Under such circumstances justice requires that restitution of the amount should be made." People ex rel. Thomas v. Sackett, 44 N. Y. Suppl. 593, 15 App. Div. 290.

The Missouri Court says it is money that "cannot be conscientiously withheld, money which in equity and good conscience he ought to refund." Sharp v. City of Carthage, 48 Mo. App. 26.

Oklohamo says it is "money * * * which it is not inequity and good conscience entitled to retain." Allsman v. Oklahoma City, 21 Okla. 142, 95 Pac. Rep. 468, 16 L. R. A. (N. S.) 511.

Kentucky puts it on the ground of "good morals," (Scott v. Board of Trustees of Town of New Castle, 132 Ky. 616, 116 S. W. Rep. 788, 21 L. R. A. (N. S.) 112), and quotes approvingly from Northrop's Exrs. v. Grave, 19 Conn. 548, where the right of recovery is predicated "upon the principle of Christian morals."

The Supreme Court of Washington justifies the refund on "the great principles of natural justice and common honesty."

We think those Courts that decide that refund should be made on grounds of "equity and good conscience,"

"fair dealing," "natural justice and common honesty," stand on higher ground than those that adopt the theory that the transaction is a gamble in which the City is the lucky participant.

We have examined a number of cases where various aspects of this question have been considered, and in addition to any reasons that may have governed those Courts that hold that refund should be made, there is one peculiar to Florida that is conclusive to us; and that is that the policy of this State is fixed by legislative enactment.

Chapter 5479, Acts of June 1st, 1905, provides for the refund by the State and Counties to the holder of a liquor license "for and on account of the unexpireed and unused portion" of his license where the sale of liquor is discontinued as the result of a local option election. The State has thus adopted a public policy of fair dealing, and it is contrary to this policy for municipalities to retain the money paid for the unused portion of a liquor license when the sale of liquor is discontinued as the result of a local option election in a precinct or County in which the City is situated.

It is argued that because the Legislature provided for a refund by the State and Counties, that it is an expression of the legislative intention, that such refund should not be made by Cities. We see no force in that argument. Legislation was necessary for a recovery from the State as it could not be sued. It is true a County may be sued, but as legislation with regard to license taxes always embraces both the State and Counties, it was natural that they should be linked together in providing for a refund.

It is pertinent to inquire into the reason for the enactment of this law. The only answer is, that "the Legis-

lature was actuated by the desire to be just and fair."
There is no other answer. And we ask, why should not
a municipality be as just and fair as the State?

It is contended that City has no power to refund this
money. A City has certain implied powers. Among
them is the obligation of fair dealing, and to return
money received for a privilege which the person who
paid it is prevented from enjoying through the operation
of law through no fault of his.

As it is the duty of the City to return the money to
the holder of the license, the declaration states a cause
of action, and it was error to sustain the demurrer.

The judgment is reversed.

TAYLOR, WHITFIELD AND ELLIS, J. J., concur.

WEST, J., dissents.

WEST, J., *dissenting*.—The license in this case was re-
voked through the fault of neither the municipality nor
the licensee and upon the happening of an event which
both of them knew at the time the license tax was paid
might occur at any time during the period covered by the
license.

At the time when the license of Plaintiff in Error
was issued the right to engage in the sale of intoxicating
liquors had, by a vote of the electors, been prohibited in
most of the Counties in the State, and being fully in-
formed with respect to the possibility of his privilege
being revoked at any time the Plaintiff in Error voluntar-
ily paid the fees required for such privilege.

The license tax is for the privilege of dealing in spirit-
uous, vinous or malt liquors and the Statute which fixes

the amount of such tax also expressly forbids the issuance of a fractional license for State, County or Municipal purposes to such dealers. Section 31, Chapter 6421, Acts of 1913, Laws of Florida. So that, any person who engages in this business in this State for any period of time must pay the whole amount of the license tax imposed.

It is true the State and Counties refund what is termed "the unexpired and unused portion of said license" when any County becomes dry as a result of a local option election, but that is under the authority of a Statute authorizing it which is expressly limited in its terms to the State and Counties of the State. Chapter 5479, Acts of 1905, Laws of Florida; Sections 1215a and 1215b, Florida Compiled Laws.

A permit and license to sell intoxicating liquors is not a property right and confers no vested interest in the holder, and it seems to be well settled that the recovery back of a license tax which was voluntarily paid will not be allowed in the absence of statutory authority therefor. 25 Cyc. 631; 15 R. C. L. Sec. 74; Johnson v. Atkins, 44 Fla. 185, 32 South. Rep. 879; Baker v. City of Fairbury, 33 Neb. 674, 50 N. W. Rep. 950; City of Camden v. Green, 54 N. J. L. 591, 25 Atl. Rep. 357; City of Maysville v. Melton, 102 Ky. 72, 42 S. W. Rep. 754; City of Houston v. Feeser, 76 Tex. 365, 13 S. W. Rep. 266; City of Helena v. Dwyer, 65 Ark. 155, 45 S. W. Rep. 349; Town of Cahaba v. Burnett, 34 Ala. 400; Mays v. City of Cincinnati, 1 Ohio St. 268; Town of Phoebus v. Manhattan Social Club, 105 Va. 144, 52 S. E. Rep. 839, 8 Ann. Cas. 667 and note.

In view of this rule I think the sounder view is that held by the authorities referred to in the majority opinion which hold the contrary view to that reached by the

Court, since there is no apparent reason why a liquor dealer should be put in a different class, with reference to the right to recover back license fees paid by him, from that of any other licensee who asks for a refund of license fees voluntarily paid by him.