INTERBOROUGH RAPID TRANSIT COMPANY, Respondent, *v.* THE CITY OF NEW YORK, Appellant.

First Department, July 1, 1937.

*William G. Mulligan, Jr.,* of counsel [*Charles Blandy* and *Robert W. Lishman* with him on the brief; *Paul Windels, Corporation Counsel,* attorney], for the appellant.

*A. H. Cole* of counsel [*Louis S. Carpenter* with him on the brief; *Hornblower, Miller, Miller & Boston,* attorneys], for the respondent.

CALLAHAN, J. The plaintiff's predecessor in interest in 1902 entered into a contract (commonly known as contract No. 2) with the defendant city, for the construction, equipment and operation of a rapid transit railway in the city of New York. Among the provisions contained therein was one that the "contractor" would pay to the city as " rent " for the railway system, an annual sum equal to the interest payable by the city upon all bonds which were issued by it to provide funds for construction of the railroad.

Contract No. 2 was modified in 1905 in numerous respects. Provision was made for the construction of certain spurs, the cost of which was to be added to the rental reserved in the original contract. The purpose of these spurs is best outlined in the following statement from the contract: " At and near each of the said points, at which provision is now to be made for *future connections*, one or more additional tracks may be constructed as a part of the railway herein described, and any one or more of the tracks of said railway may be depressed below the remaining tracks as far as shall be found necessary in order to avoid grade crossings, but not exceeding twenty (20) feet." (Italics mine.)

Accordingly, a depressed spur or branch tunnel was built in the borough of Brooklyn, in connection with the railway system, which branch tunnel ran downward and underneath the main subway tunnel for a distance of about five blocks.

A new contract (commonly known as contract No. 3) was made by the defendant with the plaintiff in 1913, under which the plaintiff took over the obligations imposed on the " contractor " by contract No. 2, and whereby the scheme for rapid transit was greatly enlarged. This agreement also provided for the construction, maintenance and operation of the enlarged system, and set forth many mutual promises by the parties. The " rental " required by contract No. 2, as modified, was continued.

Apparently, between 1913 and 1919, there were developments which rendered unnecessary the extension of the plaintiff's railway system at the point where the depressed spur had been built. The possibility of utilizing this spur for connection purposes had evidently become so remote that the plaintiff in 1919 erected in a portion of the depressed spur concrete piers to support the extension of a station. No ties or tracks had ever been laid in the spur, nor had it ever been used for railway purposes, although, of course, the concrete piers might be removed, if desired.

Shortly after 1928, the defendant was constructing an independent subway system which crossed beneath the system leased to the plaintiff. The defendant desired to use part of the depressed spur in question. After some negotiations the parties stipulated

that the defendant might enter in and use part of the depressed spur, upon the express understanding that the plaintiff did not release any of its rights in the premises and might enforce any claim it had to the spur, and to all damages sustained by the entry. The city then constructed the subway which runs through the spur, completely blocking the same for plaintiff's purposes.

From the date of entry, in 1930, to the commencement of this action in 1932, the plaintiff continued to pay the full rent reserved to the defendant, accompanying such payment with a protest.

The present action was brought in 1932. The complaint asserts a breach of the lease and a partial failure of the consideration for plaintiff's promise to pay rent. Damages are demanded for the taking of the spur.

On the trial of this action the plaintiff introduced proof consisting largely of the agreements between the parties, testimony that the cost of constructing the spur in question was $540,000, and proof of the average rate of interest paid by the city on the bonds issued to meet such cost. Plaintiff contended below and now contends that upon this proof it was entitled to recover the proportionate share of the rent it had paid to the city since the date of entry, represented by the average interest on $540,000 of city bonds. It asserts its position on the present appeal as follows: " Under the complaint and proof, the Interborough sought to recover only for past and future rentals paid and to be paid by the Interborough for the spur, from a substantial portion of which the Interborough was evicted by the City. No other damages were claimed."

Plaintiff's position is that the conduct of the city in taking the portion of the spur amounted to an actual partial eviction; that thereby all rent was suspended; that the plaintiff, despite such suspension, having paid the full rent under protest, is entitled to recover back the portion thereof represented by the spur as if it were a separate unit.

It proceeds to argue that, under the law applicable to the relation of landlord and tenant, it may recover such portion of the rent paid, based on the element of costs, without further proof of the damage sustained by the entry. No authority is cited to support this claimed right to apportionment.

In the recent case of *Sears, Roebuck & Co.* v. *9 Avenue-31 Street Corporation* (274 N. Y. 388, 404), an action for money had and received, based upon failure of consideration resulting from an eviction, the question as to the right of a tenant to recover back prepaid rental without other proof of damages was discussed but not decided. That case developed from the relation of landlord

and tenant and involved a constructive eviction from the whole premises; the eviction occurred after the tenant had prepaid the rental to the landlord and the tenant had been compelled later to pay a second rent by title paramount.

In the case at bar the contracts are not ordinary leases of real property. The parties agreed to no mere lease, but an intricate plan for the building, equipment and running of a railway system on a profit-sharing basis for a long term of years. The parties are not limited to the conventional relationship of landlord and tenant. There were many mutual obligations provided for with respect to the numerous features of the project, so that the so-called " rent " was clearly payable for considerations other than the mere possession and occupation of the property involved. Here the plaintiff has not merely paid rent in advance and it has not been damaged by eviction from the entire premises. There is involved the possession of a very minor portion of a complete railway system. Plaintiff continued to pay rent, which was one of the considerations for this contract, after its possession of this minor portion had been interfered with. The writing of a letter of protest did not establish compulsion and the payment so made remained voluntary. (*Matthews* v. *William Frank Brewing Co.*, 26 Misc. 46; *Burnham* v. *Town of Strafford*, 53 Vt. 610; *Town of Phoebus* v. *Manhattan Social Club*, 105 Va. 144; 52 S. E. 839.)

Whatever may be the rule applicable to recovery of prepaid rent in the case of an eviction from the whole or a substantial part of leased premises, such rule has no application in the present case. To permit recovery here of the portion of the rent, based on the cost of the spur and treating it as a separate unit, where the plaintiff voluntarily paid same and has had the complete beneficial use of the entire railway system, would result in compensation out of proportion to any injury suffered.

No claim was made other than one for recovery of rent and there was no justification for an award based on that theory.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

MARTIN, P. J., DORE and COHN, JJ., concur.

Judgment unanimously reversed, with costs, and the complaint dismissed, with costs.